**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

TREVOR WALTERLAKES, and ANTHONY GUNZL, individually and on behalf of all others similarly situated,

                Plaintiffs,

  v.

FROM YOU FLOWERS, LLC,

                Defendant.

---

Civil Action No. 1:25-cv-00867-MKV

**MEMORANDUM OF LAW IN SUPPORT OF FROM YOU FLOWERS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND..........................................................................................3

I.      FYF AND ITS "PURCHASE FLOW" ...............................................................3

II.     THE NAMED PLAINTIFFS AND THEIR ORDERS........................................4

III.    THIS LAWSUIT ................................................................................................5

LEGAL STANDARD.....................................................................................................6

I.      LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)....................6

II.     FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)...............................6

ARGUMENT .................................................................................................................7

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION........................7

        A.      Plaintiffs Fail to Plead Injury-in-Fact ...................................................7

        B.      Plaintiffs Fail to Plead Any Risk of Future Harm...................................9

II.     PLAINTIFFS' ADMISSIONS THAT THE DELIVERY FEE WAS DISCLOSED
        BEFORE THEY COMPLETED THEIR ORDERS DEFEAT ANY PLAUSIBLE
        CLAIMS UNDER CALIFORNIA OR NEW YORK LAW ...............................12

        A.      Plaintiffs Fail to Plead that a "Reasonable Consumer" Would be Misled by
                FYF's Allegedly Late Disclosure of the Delivery Fee as Required under
                Both the California and New York Statutes .............................................12

                1.      The California Claims (Plaintiff Walterlakes)...........................13

                2.      The New York Claims (Plaintiff Gunzl)....................................14

        B.      Plaintiff Walterlakes Fails to Plead "Actual Reliance" Required for All
                California Claims .................................................................................15

        C.      Both Plaintiffs' Claims are Precluded by the Voluntary Payment Doctrine..........17

III.    PLAINTIFF GUNZL FAILS TO ALLEGE A COGNIZABLE INJURY ........19

IV.     PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF—INCLUDING COUNTS
        III AND IV—MUST BE DISMISSED FOR THE ADDITIONAL REASON
        THAT PLAINTIFFS ALLEGE AN ADEQUATE REMEDY AT LAW ........................21

V.      THE 50-STATE CLAIM IS SUBJECT TO DISMISSAL ................................22

        A.      Merely Listing Consumer Protection Statutes from 48 States and
                Washington D.C. is Insufficient to State a Claim....................................22

B.    It Is Facially Implausible for Plaintiffs' Allegations to Satisfy Rule 23 ................23

    1.    Issues of Arbitrability ..................................................................................24

    2.    Differences in State Consumer Protection Laws ........................................25

CONCLUSION .....................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*FDA* v. *All. for Hippocratic Med.*,
    602 U.S. 367 (2024).................................................................................................9

*Amalfitano* v. *NBTY Inc.*,
    9 N.Y.S.3d 352 (N.Y. App. Div. 2015) .................................................................20

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009).........................................................................................6, 18

*Ashour* v. *Ariz. Beverages USA*,
    No. 19-cv-7081, 2025 WL 961682 (S.D.N.Y. Mar. 28, 2025)...................15, 16, 17

*Becerra* v. *Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ...............................................................................13

*In re Beech-Nut Nutrition Co. Baby Food Litig.*,
    771 F. Supp. 3d 96 (N.D.N.Y. 2025)........................................................................7

*Beegal* v. *Park West Gallery*,
    394 N.J. Super. 98 (App. Div. 2007) .....................................................................25

*Berni* v. *Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)...................................................................................10

*Best Carpet Values, Inc.* v. *Google, LLC*,
    90 F.4th 962 (9th Cir. 2024) .................................................................................14

*Binder* v. *Michael Kors (USA), Inc.*,
    No. 23-CIV-3941, 2024 WL 3227943 (S.D.N.Y. June 28, 2024)....................20, 21

*Bodenburg* v. *Apple Inc.*,
    146 F.4th 761 (9th Cir. 2025) .................................................................................7

*Borenkoff* v. *Buffalo Wild Wings, Inc.*,
    No. 16-CV-8532, 2018 WL 502680 (S.D.N.Y. Jan. 18, 2019) .......................8, 9, 20

*Borgese* v. *Baby Brezza Enters. LLC*,
    No. 20-CV-1180, 2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)..........................24, 25

*Broder* v. *MBNA Corp.*,
    722 N.Y.S.2d 524 (N.Y. App. Div. 2001) .............................................................15

*Carter* v. *HealthPort Techs., LLC*,
  822 F.3d 47 (2d Cir. 2016)...................................................................................6

*Charbonnet* v. *Omni Hotels & Resorts*,
  No. 20-CV-01777, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ....................................13, 16

*Clapper* v. *Amnesty Int'l USA*,
  568 U.S. 398 (2013).........................................................................................11

*Colpitts* v. *Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021)..................................................................8, 9

*D'Pergo Custom Guitars, Inc.* v. *Sweetwater Sound, Inc.*,
  561 F. Supp. 3d 114 (D.N.H. 2021) (New Hampshire adopts "rascality test"),
  *aff'd,* 111 F.4th 125 (1st Cir. 2024) ...................................................................25

*Darisse* v. *Nest Labs, Inc.*,
  No. 14-CV-01363, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ......................................23

*Davis* v. *Hain Celestial Grp., Inc.*,
  297 F. Supp. 3d 327 (E.D.N.Y. 2018) ...................................................................10

*Dillon* v. *U-A Columbia Cablevision of Westchester, Inc.*,
  790 N.E.2d 1155 (N.Y. 2003)..............................................................................17

*Dimond* v. *Darden Rests.*,
  No. 13-CIV-5244, 2014 WL 3377105 (S.D.N.Y. July 9, 2014)..........................................15

*Dixon* v. *von Blanckensee*,
  994 F.3d 95 (2d Cir. 2021)...................................................................................6

*Do No Harm* v. *Pfizer Inc.*,
  96 F.4th 106 (2d Cir. 2024) .................................................................................6

*Elson* v. *Black*,
  56 F.4th 1002 (5th Cir. 2023) .............................................................................25

*Eshelby* v. *L'Oreal USA, Inc.*,
  664 F. Supp. 3d 417 (S.D.N.Y. 2023).....................................................................18

*Fink* v. *Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)................................................................12, 15, 18

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
  No. 13-MD-2450, 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015)........................................23

*Goshen* v. *Mutual Life Ins. Co. of N.Y.*,
  98 N.Y.2d 314 (N.Y. 2002) ................................................................................15

*Grinblat* v. *Frontline Asset Strategies, LLC*,
No. 22-CV-4467, 2023 WL 5002474 (S.D.N.Y. Aug. 4, 2023)..............................................9

*Gunaratna* v. *Dennis Gross Cosmetology LLC*,
No. CV-20-2311, 2020 WL 8509681 (C.D. Cal. Nov. 13, 2020) ..........................................23

*Guzman* v. *Polaris Indus., Inc.*,
No. 19-CV-01543, 2020 WL 2477684 (C.D. Cal. Feb. 13, 2020) .........................................15

*Hadley* v. *Kellogg Sales Co*.,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................................7

*Ham* v. *Lenovo (U.S.) Inc.*,
664 F. Supp. 3d 562 (S.D.N.Y. 2023)..................................................................................20

*Harris* v. *Las Vegas Sands L.L.C.*,
No. CV 12-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013).......................................13

*Hawyuan Yu* v. *Dr Pepper Snapple Grp., Inc.*,
No. 18-CV-06664, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ..........................................18

*Heck* v. *Amazon.com, Inc.*,
No. 22-CV-03986, 2022 WL 17419554 (N.D. Cal. Dec. 5, 2022)........................................14

*Izquierdo* v. *Mondelez Int'l, Inc.*,
No. 16-CV-04697, 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)...................................20, 21

*Jensen* v. *Cablevision Sys. Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) ...................................................................................25

*Jung* v. *Gina Grp., LLC*,
No. 19-CV-8624, 2020 WL 3640048 (S.D.N.Y. July 6, 2020) ............................................23

*Kandel* v. *Dr. Dennis Gross Skincare, LLC*,
721 F. Supp. 3d 291 (S.D.N.Y. 2024)..................................................................................23

*Koenig* v. *Boulder Brands, Inc*.,
995 F. Supp. 2d 274 (S.D.N.Y. 2014)..................................................................................21

*Krystofiak* v. *BellRing Brands, Inc.*,
737 F. Supp. 3d 782 (N.D. Cal. 2024) .................................................................................13

*La Rosa* v. *SPD Swiss Precision Diagnostics GmbH*,
No. 24-1575-CV, 2025 WL 841687 (2d Cir. Mar. 18, 2025)...............................................14

*Luca* v. *Wyndham Worldwide Corp.*,
No. 16-CV-00746, 2019 WL 211098 (W.D. Penn. Jan. 16, 2019)........................................19

*Lujan* v. *Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................11

*Mahon* v. *Ticor Title Ins. Co.*,
    683 F.3d 59 (2d Cir. 2012)..........................................................................6

*Mazza* v. *Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .....................................................................25

*McDougall* v. *Samsung Elecs. Am., Inc.*,
    No. 23-cv-168, 2023 WL 6445838 (S.D.N.Y. Oct. 3, 2023).....................24

*McMorris* v. *Carlos Lopez & Assocs.*,
    995 F.3d 295 (2d Cir. 2021)......................................................................7, 9

*MGM Resorts Int'l Glob. Gaming Dev., LLC* v. *Malloy*,
    861 F.3d 40 (2d Cir. 2017).........................................................................11

*Monaco* v. *Bear Stearns Companies, Inc.*,
    No. CV 09-05438, 2012 WL 10006987 (C.D. Cal. Dec. 10, 2012) ...........17

*Mordy's Appliance Repair Serv. LLC* v. *Amazon Servs. LLC*,
    No. 17-CV-5376, 2018 WL 3650135 (S.D.N.Y. July 31, 2018), *aff'd,* 756 F.
    App'x 71 (2d Cir. 2019).............................................................................11

*Morris* v. *Gen. Info. Services, Inc.*,
    No. 17CV195, 2018 WL 4609943 (E.D. Va. Sept. 25, 2018) ...................18

*Norris* v. *Grosvenor Mktg. Ltd.*,
    803 F.2d 1281 (2d Cir. 1986).....................................................................22

*In re Nurture Baby Food Litig*,
    2025 WL 918927 .......................................................................................22

*Onaka* v. *Shiseido Americas Corp.*,
    No. 21-CV-10665, 2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023)...........8

*Orlander* v. *Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015).......................................................................19

*Parino* v. *BidRack*,
    838 F. Supp. 2d 900 (N.D. Cal. 2011) .......................................................17

*Passa* v. *City of Columbus, OH*,
    No. 03-CV-81, 2010 WL 1372455 (S.D. Ohio Mar. 30, 2010)................24

*Pecznick* v. *Amazon.com, Inc.*,
    No. 22-CV-00783, 2022 WL 4483123 (W.D. Wash. Sept. 27, 2022).....19

*Sira* v. *Morton*,
    380 F.3d 57 (2d Cir. 2004) ........................................................................................4

*Small* v. *Lorillard Tobacco Co. Inc.*,
    720 N.E.2d 892 (N.Y. 1999) ...................................................................................20

*Solomon* v. *Bell Atl. Corp.*,
    777 N.Y.S.2d 50 (N.Y. App. Div. 2004) ................................................................17

*Sonner v. Premier Nutrition Corporation*,
    971 F.3d at 844 .......................................................................................................22

*Spagnola* v. *Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) .....................................................................................21

*Spotswood* v. *Hertz Corp.*,
    No. CV-16-1200, 2019 WL 498822 (D. Md. Feb. 7, 2019) ....................................24

*Susan B. Anthony List* v. *Driehaus*,
    573 U.S. 149 (2014) ................................................................................................11

*Tomek* v. *Apple Inc.*,
    636 F. App'x 712 (9th Cir. 2016) .............................................................................6

*Tyrnauer* v. *Ben & Jerry's Homemade, Inc.*,
    739 F. Supp. 3d 246 (D. Vt. 2024) ...........................................................................8

*Vaccariello* v. *XM Satellite Radio, Inc.*,
    295 F.R.D. 62 (S.D.N.Y. 2013) ..............................................................................10

*Veera* v. *Banana Republic, LLC*,
    6 Cal. App. 5th 907 (Cal. Ct. App. 2016) .........................................................16, 17

*Zuckerman* v. *BMG Direct Mktg., Inc.*,
    737 N.Y.S.2d 14 (N.Y. App. Div. 2002) ................................................................15

**Statutes**

Cal. Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ................................... *passim*

Cal. Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ................................ *passim*

Cal. False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* ................................... *passim*

N.Y. Gen. Bus. Law § 349 ..................................................................................................... *passim*

N.Y. Gen. Bus. Law § 350 ..................................................................................................... *passim*

Tex. Bus. & Com. Code § 17.501(a) ..............................................................................................25

**Other Authorities**

16 CFR § 238.0 ................................................................................................................19

Fed. R. Civ. P. 8(a)(2) ......................................................................................................23

Fed. R. Civ. P. 9(b) .......................................................................................................7, 23

Fed. R. Civ. P. 12(b)(1) ..................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6) ..................................................................................................1, 6

Fed. R. Civ. P. 23(a)(2) ....................................................................................................24

Fed. R. Civ. P. 23(a)(3) ....................................................................................................24

Fed. R. Civ. P. 23(a)(4) ....................................................................................................24

Fed. R. Civ. P. 23(b)(3) ....................................................................................................25

FTC, *Transcript of Notice of Penalty Offenses Concerning Bait and Switch Sales
  Practices* (2022) .........................................................................................................19

Defendant, FROM YOU FLOWERS, LLC ("FYF"), respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Class Action Complaint ("SAC") pursuant to Fed. R. of Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs Trevor Walterlakes and Anthony Gunzl, two customers who purchased products on FYF's website, bring this putative nationwide class action alleging that FYF violated consumer protection laws in all 50 states by misleading customers by belatedly disclosing delivery fees that Plaintiffs characterize as a form of "hidden surcharge that surprises the consumer at the very last step of the check-out process."  SAC ¶ 77.  Plaintiffs seek to align their case with a very different set of circumstances in which businesses add surreptitious charges during the purchase process.  However, here, Plaintiffs' own allegations belie their claim of a "hidden surcharge."  The SAC explicitly alleges that before placing his order, each Plaintiff understood that a delivery fee was being added.  *Id.* ¶¶ 77, 117, 129, Ex. A Fig. 7.  Plaintiffs' concession of a clear and accurate disclosure of delivery fees prior to order completion defeats any claim of misleading or deceptive conduct by FYF.

Plaintiffs made no amendments in the SAC that purport to cure this fatal flaw.  This comes as no surprise as the actual facts are what they are:  Plaintiffs cannot change the indisputable fact that FYF disclosed the delivery fees to customers, including Plaintiffs, *before* they placed their orders.  Plaintiffs' claims that a belated but *fully* disclosed fee misled them into expecting there was no such fee makes no sense.  In an attempt to bolster their factually implausible claims of consumer deception, Plaintiffs spend pages of the SAC describing generic social science research (unrelated to Plaintiffs or FYF) as well as other irrelevant and misstated federal and state laws and regulations, none of which constitute "facts" and none of which can salvage the SAC's many deficiencies.

At the outset, the Court must dismiss the case for lack of subject matter jurisdiction because Plaintiffs fail to allege that they suffered any legally cognizable injury sufficient to confer Article III standing. Nor do they allege any imminent, non-speculative future harm that confers standing for injunctive relief. But even if Plaintiffs have sufficiently alleged standing—which they have not—the SAC must still be dismissed for failure to state a claim.

*First*, Plaintiffs' admissions that the delivery fees were disclosed to them defeat any plausible claim that they were misled about the total costs of their orders—a flaw fatal to their state consumer protection claims. It is well-settled that a reasonable consumer could not be misled by information fully disclosed prior to the completion of a transaction, and courts in California and New York routinely reject claims similar to Plaintiffs' for this reason. Additionally, Plaintiff Walterlakes cannot adequately plead the requisite reliance element for his California claims because he chose to continue to place his order *after learning* about the delivery fee; this affirmative choice undermines any claim of reliance. And, because Plaintiffs placed their orders with full knowledge about the delivery fees, their claims are precluded under the voluntary payment doctrine, recognized under both California and New York law.

*Second*, Plaintiff Gunzl's New York consumer protection claims should additionally be dismissed because he failed to plead a cognizable injury under New York law: he never alleges (and could not) that he did not receive the full value of his order (i.e., the product that was *delivered* to him) or that his order otherwise caused him harm.

*Third*, any claims for equitable relief should be dismissed because Plaintiffs (i) do not allege any threat of non-conjectural, non-hypothetical future harm, and (ii) allege an adequate remedy at law. Because the California Unfair Competition Law and False Advertising Law only provide for equitable relief—which Plaintiff Walterlakes does not allege to be different from the

damages he simultaneously seeks under the California Legal Remedies Act—claims brought under these two statutes must be dismissed entirely for this reason, too.

*Finally*, Plaintiffs' 50-state consumer protection law claim, brought on behalf of a nationwide class, must be dismissed because: (i) the SAC cannot satisfy Rule 8 pleading standard by simply citing to the state statutes without explaining how each state's law differs from each other or how FYF violated each specific statute; and (ii) it is facially implausible that this claim can satisfy the Rule 23 requirements due to issues of arbitrability of putative class members' claims and differences across state consumer protection laws.

For all these reasons, discussed more fully below, FYF respectfully requests that the SAC be dismissed in its entirety.

## **FACTUAL BACKGROUND**

### I.  FYF AND ITS "PURCHASE FLOW"

FYF sells flowers and gifts on its website to customers in the United States and around the world. SAC ¶¶ 34–39. In addition to the price of the product purchased, FYF charges a standard fee to deliver the product to the recipients. *Id.* ¶ 82. This delivery fee is typically $14.99, but may vary based on, among other things, the type and the size of the flower arrangement. *Id.* If a customer chooses to have the product delivered on a high-demand date or in the morning, FYF may charge a few extra dollars in addition to the standard delivery fee. *Id.* ¶ 3. All of these fees are disclosed to customers before they place their orders. *Id.* ¶¶ 49, 62, 73. As a promotional mechanism, FYF sometimes offers to waive the delivery fee for certain customers. *Id.* ¶ 4.

As they would on any e-commerce website, customers who shop on FYF need to navigate through multiple webpages in order to complete their purchase. *Id.* ¶¶ 40–78. Although Plaintiffs allege that this process or, in their words, the "purchase flow," is "labor-intensive and confusing," *id.* ¶¶ 124, 137, the process—even as described in the SAC—is an industry-standard,

straightforward one:

1. The Browsing Stage: Customer browses FYF's selections of flowers, "compares products and makes their selections." *Id.* ¶¶ 41–44, Ex. A Figs. 1A–B.

2. The Product Attribute Selection Stage:  Customer reviews the "specifications of the [flower] arrangement," and selects the options for the arrangement, any gift add-ons, the delivery date, and card options. *Id.* ¶¶ 45–52, Ex. A Figs. 2A–C.

3. The Purchase Initiation Stage:  Customer adds the product to the shopping cart, reviews the order detail in the shopping cart, and proceeds to checkout.  *Id.* ¶¶ 53–56, Ex. A Fig. 3.

4. Login, Create Account, or Guest Checkout Stage:  Customer decides whether to create or log in to an account, or check out as a guest. *Id.* ¶¶ 57–58, Ex. A Fig. 4.

5. Delivery Information Stage:  Customer inputs delivery information, including the recipient's name, address, and contact information, chooses whether to expedite delivery for an additional fee, and may again add a card message. *Id.* ¶¶ 59–64, Ex. A Fig. 5.

6. The Billing Information Stage:  Customer enters billing information, such as credit card information and billing address. *Id.* ¶¶ 65–71, Ex. A Fig. 6.

7. Review Order Stage: Customer reviews the "full details of the purchase"—including a detailed breakdown of the total costs of the order consisting of the merchandise price, sales tax, and *all delivery fees applicable to the order*—on a clean and uncluttered webpage. After reviewing the order details, customer clicks on "Place Order" and completes the purchase. *Id.* ¶¶ 72–78, Ex. A Fig. 7.

FYF's website is governed by its Terms of Service—*hyperlinked on every webpage*—that include mandatory arbitration and class waiver clauses.[1]  *See* Ex. 1 at 8–10; SAC ¶ 94, Ex. A.[2]

## II.    THE NAMED PLAINTIFFS AND THEIR ORDERS

Plaintiff Trevor Walterlakes, a California resident, allegedly purchased a gift basket on FYF's website on August 22, 2024, for delivery to his friend; the delivery was scheduled for

---

[1]    Although the SAC does not itself discuss the text of the Terms of Service, the Court may nevertheless consider the text because it is incorporated by reference in the SAC (*see* SAC ¶¶ 93–94) and is integral to the complaint insofar as it governs Plaintiffs' ability to pursue their claims in court and on a class-wide basis in the first instance.  *See Sira* v. *Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." (citations omitted)).

[2]    Contrary to Plaintiffs' allegations that "[a]cross all stages of the Purchase Flow, consumers are never provided with Defendant's Terms of Service," SAC ¶ 94, and left out from six of the ten screenshots Plaintiffs attached to the SAC, the Terms of Service is hyperlinked on every webpage of FYF.

November 6, 2024, two-and-a-half months after the date of purchase. SAC ¶¶ 12, 114, 116. Plaintiff Walterlakes followed through FYF's purchase flow to complete his order, and was informed on the "Review Order" page, and before completing payment, that his purchase included a $14.99 delivery fee. *Id.* ¶¶ 114–21. Although he alleges that he was "surprise[d]" by the fee, he chose to continue to place his order. *Id.* ¶¶ 122–23.

Plaintiff Anthony Gunzl, a New York resident, allegedly purchased a flower arrangement on FYF's website on May 17, 2023, to be delivered that same day as a condolence gift to his friend. *Id.* ¶¶ 13, 127. Plaintiff Gunzl followed through FYF's purchase flow to complete his order, and was informed on the "Review Order" page, and before completing payment, that his purchase included a $14.99 delivery fee. *Id.* ¶¶ 128–35. Although he alleges that he was "[s]urprise[d]" by the fee, he chose to continue to place his order. *Id.* ¶¶ 135–36.

## III.    THIS LAWSUIT

This action commenced on January 29, 2025, when Plaintiff Walterlakes and another now-dismissed plaintiff filed the original Class Action Complaint. ECF No. 1. On March 28, 2025, Plaintiffs filed the First Amended Class Action Complaint ("FAC"), substituting Plaintiff Gunzl for the dismissed plaintiff. ECF No. 22. On May 9, 2025, FYF submitted a pre-motion to dismiss letter identifying numerous deficiencies in the FAC, which Plaintiffs opposed. ECF Nos. 28, 29. On May 19, 2025, the Court offered Plaintiffs a final opportunity to amend by June 3, 2025. ECF No. 30. Plaintiffs filed the SAC on June 3, 2025, asserting claims under (i) the consumer protection laws of all 50 states (Count I); (ii) the California Consumers Legal Remedies Act ("CLRA"), False Advertising Law ("FAL"), and the Unfair Competition Law ("UCL") (Counts II–IV); and (iii) the New York Deceptive and Unfair Trade Practices Act (NY GBL § 349) and False Advertising Law (NY GBL § 350) (Counts V–VI). ECF No. 32.

**LEGAL STANDARD**

## I.    LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

A court lacks subject matter jurisdiction and must dismiss a case pursuant to Rule 12(b)(1) if a plaintiff lacks Article III standing. *See Mahon* v. *Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "To establish individual standing, a plaintiff must show: (1) they suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) there is a 'causal connection between the injury and the conduct complained of'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Do No Harm* v. *Pfizer Inc.*, 96 F.4th 106, 113 (2d Cir. 2024) (quoting *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Where the challenge to standing is facial, "[t]he task of the district court is to determine whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

## II.    FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Although well-pleaded factual allegations contained in the complaint are assumed to be true, the Court need not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon* v. *von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks and citation omitted).

Moreover, the California law claims (Counts II–IV) are subject to Rule 9(b)'s heightened pleading standard. "Rule 9(b) applies to UCL [] claims" which are "grounded in fraud." *Tomek* v. *Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (citation omitted). "Averments of fraud [under the UCL] must be accompanied by 'the who, what, when, where, and how' of the

misconduct charged." *Id.* at 713 (citation omitted). And where, as here, the complaint alleges claims under all three prongs of the UCL based on a "unified course of fraudulent conduct,"—i.e., FYF "using a misleading Purchase Flow to obscure the full and true price of its floral arrangements"—"Rule 9(b)'s particularity requirement applies to the unlawful and unfair prong of the UCL." *Hadley* v. *Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (citing *Vess* v. *Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003)); SAC ¶¶ 188, 195, 202. Further, because the CLRA and FAL claims are grounded in the same course of fraudulent misconduct as the UCL fraudulent prong claim, they are also subject to Rule 9(b). *See Bodenburg* v. *Apple Inc.*, 146 F.4th 761, 770–71 (9th Cir. 2025) (affirming the dismissal of fraud-based CLRA and FAL claims for failure to satisfy Rule 9(b)'s heightened pleading requirements).

## ARGUMENT

## I.   THE COURT LACKS SUBJECT MATTER JURISDICTION

While few cases lack the factual predicate for an Article III injury, this is the unusual case supporting dismissal on this basis for two reasons. *See McMorris* v. *Carlos Lopez & Assocs.*, 995 F.3d 295, 305 (2d Cir. 2021). First, Plaintiffs fail to allege any legally cognizable injury suffered when purchasing FYF products. Second, to the extent Plaintiffs seek injunctive relief as to possible future injury, they fail to allege the required imminent, non-speculative, legal harm.

### A.   Plaintiffs Fail to Plead Injury-in-Fact

Plaintiffs allege that they suffered injury insofar as they would have abstained from purchasing FYF's products and/or would have sought out less expensive alternatives had they known earlier in the "purchase flow" that they would incur the $14.99 delivery fee. *See, e.g.*, SAC ¶¶ 123, 136. Such allegations, however, are insufficient to confer standing because they do not amount to an injury-in-fact for purposes of Article III standing.

To establish injury-in-fact based on overpayment, a plaintiff must allege "that defendant's

products were worth something less than [the amount paid] or unusable," *In re Beech-Nut Nutrition Co. Baby Food Litig.*, 771 F. Supp. 3d 96, 105-06 (N.D.N.Y. 2025), or that the plaintiff paid a price premium based on the defendant's misrepresentation, *see Tyrnauer* v. *Ben & Jerry's Homemade, Inc.*, 739 F. Supp. 3d 246, 258 (D. Vt. 2024).  Here, at no point does either Plaintiff allege that what they received (the products that were *delivered* to them) was worth less than what they paid at the time of purchase (the total costs of the order consisting of the product price and delivery fee).  Nor do they allege that a misrepresentation by FYF caused them to overpay:  to the extent they attempt to claim that FYF's failure to disclose the delivery fees earlier in the purchase flow caused them to pay more than they initially expected, the mere fact that Plaintiffs thought at the beginning of the purchase flow that they might pay less than they ultimately learned they had to pay—and then chose to pay—is insufficient to confer standing.  *See Tyrnauer*, 739 F. Supp. 3d at 255–56 (subjective disappointment about what was paid or received is insufficient to constitute an injury for Article III standing).[3]  Indeed, "numerous courts have raised doubts as to whether … [an] alleged economic injury is cognizable for Article III standing where, as here, plaintiff fails to allege that the item was defective in any way, or that it was worth *objectively less* than what she paid." *Borenkoff* v. *Buffalo Wild Wings, Inc.*, No. 16-CV-8532, 2018 WL 502680, at *3 (S.D.N.Y. Jan. 18, 2019) (emphasis added).

While in limited instances "an allegation that a plaintiff would not have purchased a product or would not have paid the same amount" is sufficient to plead injury-in-fact, *Colpitts* v. *Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021), this is not one of them.  In these limited cases, the alleged injury was predicated on a material misrepresentation, omission, or other deceptive conduct by a seller *that kept the plaintiff **from knowing** the truth about the*

---

[3]    To the extent Plaintiffs claim abandoning their purchases upon learning about the delivery fee would have amounted to a waste of their time, that, too, is not a cognizable injury.  *See infra* Section I.B.

*product purchased until after the purchase was completed. See, e.g.*, *Onaka* v. *Shiseido Americas Corp.*, No. 21-CV-10665, 2023 WL 2663877, at *3 (S.D.N.Y. Mar. 28, 2023) (injury-in-fact satisfied by allegation that plaintiffs would not have purchased or would have paid less for the products had plaintiffs known they contained harmful chemicals); *Borenkoff*, 2018 WL 502680, at *3 (finding Article III standing where plaintiff would not have purchased food products if she knew they were fried using beef tallow); *Colpitts*, 527 F. Supp. 3d at 575 (finding standing for plaintiffs alleging they would have paid less had they known the "truth" that "smokehouse" almonds were not smoked). Here, Plaintiffs explicitly acknowledge that they were *fully aware* that a delivery fee would be charged, and they nevertheless proceeded to place their orders. SAC ¶¶ 122–23, 135–36. By their own admission, Plaintiffs knew the full costs of their purchase, continued to place the order while fully informed, and received exactly what they paid for—and hence suffered no legally cognizable injury.

### B.    Plaintiffs Fail to Plead Any Risk of Future Harm

The SAC alleges that, but for an award of injunctive relief, Plaintiffs will be harmed in the future insofar as they may desire to shop on FYF but cannot be certain, without expending time, as to whether FYF's pricing practices have changed. SAC ¶¶ 124, 137. These allegations are insufficient to confer standing because any purported future injury "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA* v. *All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citation omitted).

As an initial matter, Plaintiffs fail to allege they are likely to suffer a legally cognizable injury in the future. Where "the only cognizable harm Plaintiff asserts is for a loss of time, which he claims has been squandered as a direct consequence of Defendant's actions," that "alone is insufficient to establish standing unless it is inextricably linked to a concrete, tangible injury." *Grinblat* v. *Frontline Asset Strategies, LLC*, No. 22-CV-4467, 2023 WL 5002474, at *3 (S.D.N.Y.

Aug. 4, 2023); *see also McMorris*, 995 F.3d at 303 ("[W]here plaintiffs 'have not alleged a substantial risk of future [harm], the time they spent protecting themselves against [a] speculative threat cannot create an injury.'" (citation omitted)).  Here, Plaintiffs allege that they would need to spend time to investigate FYF's pricing practice should they use its website in the future, SAC ¶¶ 124, 137, but nowhere link these allegations to a concrete, tangible injury.  These allegations are therefore insufficient to confer Article III standing for purposes of injunctive relief.

Plaintiffs also cannot credibly allege future deception as a basis for injury.  Plaintiffs aver that they are "likely to be repeatedly presented with false or misleading information" and are "likely to be unable to make informed decisions about whether to purchase from [FYF] or its competitors."  *Id.* ¶¶ 124, 137.  However, their allegation that FYF "has begun changing its purchase flow in response to this lawsuit" cuts against any credence of their claims that they are likely to suffer an injury through future deception.  *Id.* ¶¶ 125, 138.  Moreover, it is well-settled that a purported past injury based on a lack of knowledge cannot occur twice:  it eradicates the likelihood of future injury predicated on the same conduct.  *See, e.g.*, *Berni* v. *Barilla S.p.A.*, 964 F.3d 141, 148 (2d Cir. 2020) (plaintiffs who "ha[d] been deceived by the product's packaging once" would not be deceived again when making future purchase); *Vaccariello* v. *XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013) (no standing where plaintiff was "now keenly aware of" defendant's practices and policies and therefore "very unlikely" to be deceived again); *Davis* v. *Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) ("Because a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, there is no danger that they will again be deceived by them." (internal quotation marks and citation omitted)).  Here, Plaintiffs' awareness of the delivery fees diminishes any possibility of being "misled" again when making a future purchase.

Plaintiffs' alleged future deception is also conjectural because they do not allege any concrete plan to use FYF's service again, despite the conclusory assertion that they each "continue[] to desire to purchase floral arrangements and/or gift item deliveries generally, and from Defendant, who controls a sizable portion of the flower market."  SAC ¶¶ 124, 137; *see Lujan*, 504 U.S. at 564 n.2 (no injury where "the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control"); *MGM Resorts Int'l Glob. Gaming Dev., LLC* v. *Malloy*, 861 F.3d 40, 47–48 (2d Cir. 2017) (mere interest in, as opposed to "concrete plans" to, engage in an activity which would result in economic harm is insufficient for a finding of imminent harm).  There is no certainty at all that Plaintiffs will choose to use FYF—a website they considered "deceptive"—again, but if they do, it only shows that their purported risk of hypothetical harm from using FYF is outweighed by the benefits FYF offers and any downsides associated with using FYF's competitors.

Finally, Plaintiffs' alleged future harms from "new deceptive advertising and drip pricing methods" FYF may introduce on its and other acquired websites are entirely speculative.  SAC ¶¶ 90, 125, 138.  "An allegation of future injury may suffice if the threatened injury is *certainly impending*, or there is *a substantial risk* that the harm will occur."  *See Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 158 (2014) (emphases added) (quotation marks and citation omitted).  Here, Plaintiffs broadly assert that FYF "may try to introduce new deceptive advertising and drip pricing methods" and that it "may reinstitute its drip pricing scheme via potential alter egos and/or newly acquired brands," based on speculation about rising tariff-related costs and FYF's potential acquisitions due to industry consolidation.  SAC ¶¶ 90–91.  These "hypothetical future harm[s]" are far from "certainly impending," and Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of" such harms.  *Clapper* v. *Amnesty Int'l USA*,

568 U.S. 398, 416 (2013); *see also Mordy's Appliance Repair Serv. LLC* v. *Amazon Servs. LLC*, No. 17-CV-5376, 2018 WL 3650135, at *2 (S.D.N.Y. July 31, 2018) (holding that plaintiff's decision not to sell on Amazon based on the *possibility* that Amazon would remove its products following a "highly attenuated chain of possibilities" was a "hypothetical future harm" (quoting *Clapper*, 568 U.S. at 410)), *aff'd*, 756 F. App'x 71 (2d Cir. 2019).

## II. PLAINTIFFS' ADMISSIONS THAT THE DELIVERY FEE WAS DISCLOSED BEFORE THEY COMPLETED THEIR ORDERS DEFEAT ANY PLAUSIBLE CLAIMS UNDER CALIFORNIA OR NEW YORK LAW

Even if Plaintiffs have sufficiently alleged Article III standing, they still fail to state any plausible claims under California or New York consumer protection laws.  The gravamen of Plaintiffs' complaint is that FYF employed a scheme to mislead and manipulate customers into purchasing flowers with a higher-than-expected price by surprising them with a delivery fee at the last step of the purchase flow.  However, Plaintiffs' claims are implausible because, as they readily admit, FYF *did* disclose the delivery fees before customers completed their purchase.  *See* SAC ¶¶ 72–73, 77 (alleging that FYF disclosed the delivery fee on the "Review Order" page before order completion); *id.* ¶¶ 122–23, 135–36 (alleging Plaintiffs were "presented with" the delivery fee before placing their orders).  Plaintiffs' admissions that the delivery fees were disclosed to them prior to order completion are fatal to their claims.

### A. Plaintiffs Fail to Plead That a "Reasonable Consumer" Would Be Misled by FYF's Allegedly Late Disclosure of the Delivery Fee as Required under Both the California and New York Statutes

Plaintiffs' admissions that they learned about the delivery fees before placing their orders defeat any plausible claim that a "reasonable consumer" would be misled by FYF's allegedly late disclosure of that fee, warranting dismissal under both California and New York consumer protection laws.  *See Fink* v. *Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement

would not have misled a reasonable consumer" under New York and California laws).

### 1. The California Claims (Plaintiff Walterlakes)

"A claim for fraudulent misrepresentation or omission under [the CLRA, FAL, or UCL fraudulent prong[4]] requires '(1) misrepresentation or omission, (2) reliance, and (3) damages.'" *Krystofiak* v. *BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 799 (N.D. Cal. 2024) (citation omitted). Claims brought under all three statutes are governed by the same "reasonable consumer" standard, requiring a plaintiff to "show that members of the public are likely to be deceived" by the omission or misrepresentation. *Becerra* v. *Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted).

Plaintiff Walterlakes cannot plausibly plead that FYF's allegedly late disclosure of the delivery fee would mislead a reasonable consumer as to the total price of an order. Courts routinely dismiss claims brought under the three statutes where, as here, the allegedly belatedly disclosed fee was nevertheless fully disclosed *before* a transaction was consummated. In *Charbonnet* v. *Omni Hotels & Resorts*, plaintiff alleged that defendant's advertising of its hotel room rates online was deceptive "drip pricing" in violation of the CLRA, UCL, and FAL. No. 20-CV-01777, 2020 WL 7385828, at *1–2 (S.D. Cal. Dec. 16, 2020). Similar to Walterlakes, plaintiff there contended that "she was 'lured into [Omni's] artificially lowered rate' for a hotel room, and 'the [property fee] was not revealed until after the false price was first represented.'" *Id.* The court rejected her claims because she "ha[d] not adequately alleged a cognizable legal theory of how reasonable consumers would be deceived by Omni's representations" when the total price, including the property fee, was disclosed to consumers before the room was booked. *Id.* at *3. Similarly, in *Harris* v. *Las Vegas Sands L.L.C.*, the court dismissed plaintiff's CRLA, UCL, and FAL claims,

---

[4] Plaintiff Walterlakes alleges that FYF violated all three prongs (fraudulent, unfair, and unlawful) of the UCL.

finding that "no reasonable consumer could be misled" by the hotel resort fee plaintiff took issue with, which was disclosed before plaintiff paid for the reservation.  No. CV 12-10858, 2013 WL 5291142, at *5–6 (C.D. Cal. Aug. 16, 2013).

Plaintiff Walterlakes's failure to plausibly allege that a reasonable consumer would be misled by FYF's late disclosure of the delivery fee also dooms his claims under the UCL's unfair and unlawful prongs.  First, Plaintiff's UCL unfair prong claim cannot survive when his UCL fraudulent prong claim, as discussed above, fails, because his "unfair" and "fraud" allegations—both based on FYF's alleged use of "a misleading Purchase Flow to obscure the full and true price of its floral arrangements"—"overlap entirely."  *Heck* v. *Amazon.com, Inc.*, No. 22-CV-03986, 2022 WL 17419554, at *4 (N.D. Cal. Dec. 5, 2022); *compare* SAC ¶ 195 ("Defendant's continuing fraudulent actions of using a misleading Purchase Flow to obscure the full and true price of its floral arrangements is likely to deceive members of the public."), *with* SAC ¶ 188 ("Defendant's unfair actions of using a misleading Purchase Flow to obscure the full and true price of its floral arrangements cause injuries to consumers.").  Second, Plaintiff's UCL unlawful claim must be dismissed because it is entirely predicated on the CLRA and FAL violations, which, as discussed above, he fails to adequately allege.  *See Best Carpet Values, Inc.* v. *Google, LLC*, 90 F.4th 962, 974–75 (9th Cir. 2024) (dismissing a UCL unlawful claim where defendant's conduct did not violate the predicate law).

### 2.    The New York Claims (Plaintiff Gunzl)

To state a GBL § 349 or § 350 claim, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *La Rosa* v. *SPD Swiss Precision Diagnostics GmbH*, No. 24-1575-CV, 2025 WL 841687, at *1 (2d Cir. Mar. 18, 2025) (quoting *Koch* v. *Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. 2012)).  Similar to the

California claims, a plaintiff must plausibly allege that the "deceptive [conduct was] likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink*, 714 F.3d at 741.

Plaintiff Gunzl's New York law claims fare no better than his co-Plaintiff's California law claims:  it is well-settled that there can be no GBL §§ 349 and 350 claims "when the allegedly deceptive practice was *fully disclosed*." *Broder* v. *MBNA Corp.*, 722 N.Y.S.2d 524, 526 (N.Y. App. Div. 2001) (emphasis added); *Goshen* v. *Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (N.Y. 2002).  New York courts likewise routinely hold that a reasonable consumer cannot be misled into thinking that a fee attached to a transaction is not included in the total costs when that very fee was fully disclosed prior to the completion of the transaction.  *See, e.g.*, *Dimond* v. *Darden Rests.*, No. 13-CIV-5244, 2014 WL 3377105, at *7–8 (S.D.N.Y. July 9, 2014) (dismissing claim when the mandatory gratuity was disclosed on the menu); *Zuckerman* v. *BMG Direct Mktg., Inc.*, 737 N.Y.S.2d 14, 15 (N.Y. App. Div. 2002) (affirming dismissal of claim where shipping and handling fees were fully disclosed).

### B.    Plaintiff Walterlakes Fails to Plead "Actual Reliance" Required for All California Claims

The California claims must also be dismissed because Plaintiff Walterlakes cannot plausibly plead actual reliance on FYF's allegedly misleading delivery fee disclosure.  *See Guzman* v. *Polaris Indus., Inc.*, No. 19-CV-01543, 2020 WL 2477684, at *3 (C.D. Cal. Feb. 13, 2020) (actual reliance must be alleged under CLRA, FAL, and UCL).  Actual reliance requires a plaintiff to show that "had the omitted information been disclosed[,] one would have been aware of it and *behaved differently*." *Ashour* v. *Ariz. Beverages USA*, No. 19-cv-7081, 2025 WL 961682, at *7 (S.D.N.Y. Mar. 28, 2025) (citation omitted) (emphasis added).  Here, Plaintiff Walterlakes cannot show that he would have "behaved differently" had the delivery fee been disclosed to him, for the simple reason that the fee *was* disclosed to him, yet he did not behave differently and continued to

15

place his order.

Here, Plaintiff Walterlakes avers that he was "not expecting to be charged an additional $14.99" because of the alleged "omission" on earlier order flow pages, SAC ¶ 117, but admits that he was "presented" with the delivery fee before he completed his order, *id.* ¶¶ 122–23. A consumer cannot establish reliance where, as here, he completed the purchase *after* the previously omitted information had been disclosed. *See, e.g.*, *Charbonnet*, 2020 WL 7385828, at *5 (plaintiff "cannot show that she would have behaved any differently as the allegedly 'omitted' property fee was disclosed in the total price and she accepted it," which "shows that the addition of taxes and fees ultimately had no effect on her decision to book a room there"); *Ashour*, 2025 WL 961682, at *7 ("Because [plaintiff] kept buying Arizona products after learning that they contained citric acid, she cannot establish reliance, that is, that she would have 'behaved differently' had the Arizona products disclosed that they contained the alleged preservative."). Plaintiff Walterlakes's act of completing his order, after becoming aware of the delivery fee, belies his conclusory assertion that he "would not have purchased the [] floral arrangements had [he] known that the product was going to be substantially more expensive than initially listed." SAC ¶¶ 123, 173, 181, 206.

In the SAC and his response to FYF's pre-motion letter, Plaintiff Walterlakes relied primarily on *Veera* v. *Banana Republic, LLC*, 6 Cal. App. 5th 907 (Cal. Ct. App. 2016), to support his claims. SAC ¶ 104; ECF No. 29. But *Veera* is distinguishable because facts dispositive to the court's finding there do not exist in the present case. In *Veera*, plaintiffs brought claims under the CLRA, UCL, and FAL against Banana Republic, alleging that signs in its store windows advertising a 40 percent off sale were false or misleading because they did not disclose that the discount applied only to certain items. Critically, there, plaintiffs saw those signs, which led them to enter the store and shop. *Veera*, 6 Cal. App. 5th at 920. The court specifically held that, "*[o]n*

*these facts*, the question of reliance and causation does not rest as a matter of law on whether plaintiffs knew the actual price of the items they purchased at the moment money was exchanged." *Id.* (emphasis added).  In contrast, nowhere in the SAC does Plaintiff allege that FYF stated anywhere on the website or in the purchase flow that it would deliver orders without a fee—all that he alleges is that FYF did not disclose the delivery fee until the last step before he placed his order, which distinguishes his claim from *Veera* and aligns it with the type of claim plaintiffs in *Charbonnet* and *Ashour* tried to assert but failed.

### C.    Both Plaintiffs' Claims Are Precluded by the Voluntary Payment Doctrine

Plaintiffs' claims are separately precluded under the "voluntary payment doctrine," which "bars the recovery of money that was voluntarily paid with full knowledge of the facts."  *Monaco* v. *Bear Stearns Companies, Inc.*, No. CV 09-05438, 2012 WL 10006987, at *9 (C.D. Cal. Dec. 10, 2012) (quoting *Parino* v. *BidRack*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011)); *see also Dillon* v. *U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003).  Courts in California and New York have recognized that this doctrine is applicable to the type of consumer protection claims Plaintiffs allege here.  *See, e.g.*, *Parino*, 838 F. Supp. at  908 (evaluating whether defendant asserted the voluntary payment doctrine defense against CLRA, UCL, and FAL claims); *Solomon* v. *Bell Atl. Corp.*, 777 N.Y.S.2d 50, 56 (N.Y. App. Div. 2004) (acknowledging this defense against GBL §§ 349 & 350 claims); *Ashour*, 2025 WL 961682, at *10 (addressing this defense against GBL §§ 349 & 350 claims and noting that plaintiff "likely will not be able to recover for any purchases . . . made after learning that the products contained citric acid").

* * *

Plaintiffs attempt to make up for the fundamental flaws in their case by casting FYF's ordering process as "confusing and lengthy," "requiring numerous decisions and inputs from the consumers" and "designed to burn through consumer time and hassle them into acquiescing to the

17

Surprise Fee." SAC ¶¶ 3–4, 24. Not only do these allegations betray common sense, they are also plainly contradicted by the SAC's description of FYF's purchase flow and the exhibited screenshots of FYF's website. *See id.* ¶¶ 40–78, Ex. A. The description and screenshots only confirm that FYF's purchase flow is no different from a standard online shopping process. *See Fink*, 714 F.3d at 742 (concluding that plaintiffs' claims lack the facial plausibility where "the allegations of the Complaint are materially inconsistent with the sole advertisement Plaintiffs have submitted"); *Iqbal*, 556 U.S. at 663–64 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." (citing *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 556 (2007))).

Nor can the seven pages of social science research alleged in the SAC salvage Plaintiffs' theory that FYF's delivery fee disclosure misled or deceived consumers. *See* SAC ¶¶ 17–33; *cf. Hawyuan Yu* v. *Dr Pepper Snapple Grp., Inc.*, No. 18-CV-06664, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020) ("[A]dding surveys cannot alone salvage implausible claims."). These studies purport to show that average consumers encountering so-called "drip pricing" would be behaviorally unable to terminate their ordering process when a fee is revealed late in a purchase flow. There are no allegations as to whether and how these studies even apply to Plaintiffs or FYF. General literature reciting possible behavioral issues for unknown people using unknown websites cannot satisfy the requirement that Plaintiffs plead ***factual*** allegations asserting plausible claims as to them. *See Eshelby* v. *L'Oreal USA, Inc.*, 664 F. Supp. 3d 417, 426 (S.D.N.Y. 2023) (dismissing all claims and denying plaintiff's request to amend to add consumer survey data because "[a] plaintiff cannot rely solely on consumer surveys to state a claim"); *Morris* v. *Gen. Info. Services, Inc.,* No. 17CV195, 2018 WL 4609943, at *8 n.14 (E.D. Va. Sept. 25, 2018) ("[No] general research findings—however accurate or persuasive—can substitute for factual allegations

18

about the specific harm Plaintiffs suffered.").

Plaintiffs also attempt to salvage their claims by asserting that FYF's delivery fee disclosure "runs afoul" of FTC rules and laws of states irrelevant to Plaintiffs.  SAC ¶¶ 96–103, 111–12.  But Plaintiffs misstate those rules and laws.  First, the FTC "bait and switch" rules Plaintiffs rely on apply to "the advertising of a product without the bona fide intention to sell it, for the purpose of establishing contact with a prospective customer in order to induce or 'switch' him to purchase *another product*"—an entirely different set of circumstances from this case.  FTC, *Transcript of Notice of Penalty Offenses Concerning Bait and Switch Sales Practices* (2022) (emphasis added); 16 CFR § 238.0 (defining "bait advertising").  Second, the two out-of-state cases Plaintiffs cite in the SAC that purportedly show that "many states' unfair and deceptive practices statutes have been interpreted to prohibit drip pricing and other forms of bait-and-switch advertising" are also inapposite:  *Luca* v. *Wyndham Worldwide Corp.*, No. 16-CV-00746, 2019 WL 211098 (W.D. Penn. Jan. 16, 2019) addresses whether plaintiff qualified as an "aggrieved consumer" under a New Jersey statute to challenge defendant's terms of use, while *Pecznick* v. *Amazon.com, Inc.*, No. 22-CV-00783, 2022 WL 4483123 (W.D. Wash. Sept. 27, 2022) addresses consolidation and class counsel issues in a case where plaintiffs challenged Amazon's policy change to charge a fee for grocery delivery.  *See* SAC ¶ 112.

## III.   PLAINTIFF GUNZL FAILS TO ALLEGE A COGNIZABLE INJURY

Plaintiff Gunzl's GBL §§ 349 & 350 claims are subject to dismissal for the additional reason that he fails to plead a cognizable injury, which requires Plaintiff to allege that, "on account of a materially misleading practice, [he] purchased a product *and did not receive the full value of [his] purchase.*"  *Orlander* v. *Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (emphasis added).  In other words, "a plaintiff 'must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use

of the product adversely affected plaintiff's health.'" *Ham* v. *Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 580 (S.D.N.Y. 2023) (citation omitted).  Here, Plaintiff Gunzl alleges that he was "injured in the form of the full purchase price of the products purchased from Defendant, a price premium, or at a minimum, any Surprise Fees that were not disclosed until later stages in the Purchase Flow," but none of these alleged injuries are cognizable under New York law.  SAC ¶¶ 215, 224.

First, neither the "full purchase price" nor the "Surprise Fee" (i.e., the delivery fee) constitutes an injury.  "Courts applying New York law have routinely held that the loss of the purchase price of an item, standing alone, does not constitute an 'actual injury' under GBL § 349." *Borenkoff*, 2018 WL 502680, at *4.  Moreover, the deception and the injury cannot be the same. *See Small* v. *Lorillard Tobacco Co. Inc.*, 720 N.E.2d 892, 898 (N.Y. 1999).  The allegedly belatedly disclosed delivery fee that Plaintiff Gunzl claims was also his injury is the precise "deception as injury" theory rejected by the New York Court of Appeals in *Small*.  *See also Amalfitano* v. *NBTY Inc.*, 9 N.Y.S.3d 352, 355 (N.Y. App. Div. 2015) (plaintiff did not suffer actual injury because the coupon he did not receive was both the allegedly deceptive act and injury); *Izquierdo* v. *Mondelez Int'l, Inc.*, No. 16-CV-04697, 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016) (allegation "that [plaintiffs] were financially injured after purchasing the Candy and receiving less Candy than they believed they bargained for" was insufficient to plead injury).

Next, Plaintiff Gunzl's alleged "price premium" injury is likewise deficient.  "[A] plaintiff alleging a NY GBL claim under a price premium theory 'must allege not only that [the] defendant[] charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product.'" *Binder* v. *Michael Kors (USA), Inc.*, No. 23-CIV-3941, 2024 WL 3227943, at *4 (S.D.N.Y. June 28, 2024) (quoting *Duran* v. *Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020)).  The SAC is devoid of any allegation that FYF made any

affirmative misrepresentation or omission of material fact about the product or its delivery that caused Plaintiff to pay a premium. *Cf. Koenig* v. *Boulder Brands, Inc*., 995 F. Supp. 2d 274, 288 (S.D.N.Y. 2014) (recognizing price premium injury where product was misleadingly represented as "fat free" milk). Without more, the mere use of "the word 'premium' . . . does not make [Plaintiff's] injury any more cognizable." *Izquierdo*, 2016 WL 6459832, at *7.

Indeed, there can be no dispute that Plaintiff Gunzl received the benefit of the bargain, both as to the product purchased and the delivery fee: the product he ordered was *delivered* to him, and he does not allege that the value he received from FYF—i.e., either the product or the delivery of the product—was worth less than the full purchase price or delivery fee he paid. *See Spagnola* v. *Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *see also Binder*, 2024 WL 3227943, at *4 ("'[D]isappointed bargain-hunters do not suffer any actual injuries or damages simply because they did not get as good a deal as they expected.'" (quoting *Ham*, 664 F. Supp. 3d at 581)). Because none of Plaintiff's three theories constitute a cognizable injury, his GBL claims must be dismissed.

## IV.    PLAINTIFFS' CLAIMS FOR EQUITABLE RELIEF—INCLUDING COUNTS III AND IV—MUST BE DISMISSED FOR THE ADDITIONAL REASON THAT PLAINTIFFS ALLEGE AN ADEQUATE REMEDY AT LAW

Plaintiff Walterlakes seeks injunctive relief and restitution under the CLRA, UCL, and FAL, SAC ¶¶ 175–76, 181, 207, while Plaintiff Gunzl seeks injunctive relief and restitution for his New York claims, *id.* ¶¶ 215–16, 224–25. As discussed earlier, Plaintiffs' claims for injunctive relief fail because they do not allege any threat of future harm that is not conjectural or hypothetical. *See supra* Section I.B. Their claims for restitution must also be dismissed because they allege that they have adequate remedy at law.

As this Court has held in *In re Nurture Baby Food Litig.*, when seeking restitution under the FAL and UCL, "Plaintiffs must establish that 'they lack an adequate remedy at law before securing equitable restitution for past harm.'" No. 21-CV-01217, 2025 WL 918927, at *16

(S.D.N.Y. Mar. 26, 2025) (citation omitted).  The same holds true for restitution under the CLRA, *Sonner*, 971 F.3d at 844, and under New York law, *Norris* v. *Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1287 (2d Cir. 1986).  Here, both Plaintiffs seek damages but do not "show how the restitution they seek differs from the damages they seek."  *In re Nurture Baby Food Litig.*, 2025 WL 918927, at *16; SAC ¶¶ 173, 215, 224.  To the contrary, they acknowledge that the restitution (in the "amounts have been paid to Defendant by [Plaintiffs]" that "should be restored") is the same as their alleged damages ("the full purchase price of the products purchased from Defendant").  SAC ¶¶ 173, 215, 224.  Plaintiffs' claims for restitution should therefore be dismissed and, because the UCL and FAL "only permit equitable relief by way of injunctive relief and restitution," Counts III and IV must be dismissed.  *In re Nurture Baby Food Litig.*, 2025 WL 918927, at *16 (dismissing UCL and FAL claims when "Plaintiffs fail to show how the restitution they seek differs from the damages they seek under other statutes [including the CLRA] or legal theories").

## V.    THE 50-STATE CLAIM IS SUBJECT TO DISMISSAL

Count I of the SAC sets forth a claim for violations of the consumer protection acts of all 50 states on behalf of Plaintiffs and the nationwide class.  This Count should be dismissed for two reasons.  First, the mere listing of each state's consumer protection statute is insufficient to state a claim under Rule 8.  Second, it is facially implausible that this claim, alleged on behalf of a nationwide class, can ever satisfy Rule 23, warranting dismissal at the pleading stage.

### A.    Merely Listing Consumer Protection Statutes from 48 States and Washington, D.C. Is Insufficient to State a Claim[5]

Courts, including in this District, have repeatedly rejected attempts by plaintiffs to state a claim on behalf of a putative nationwide class by simply listing the 50 states' consumer protection

---

[5]    For clarity, the list of consumer protection statutes omits California's and New York's, but includes Washington, D.C.'s, resulting in a list of 49 statutes.  *See* SAC ¶ 155.

statutes along with cursory, generalized allegations of how they have been violated. *See, e.g.*, *Kandel* v. *Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 307 (S.D.N.Y. 2024) (dismissing claim because "the complaint fail[ed] to provide any facts showing how the laws in each state differ or how [defendant] violated each state's laws"); *Gunaratna* v. *Dennis Gross Cosmetology LLC*, No. CV-20-2311, 2020 WL 8509681, at *7 (C.D. Cal. Nov. 13, 2020) (striking 50-state claim because "the [complaint]'s conclusory assertions offer[ed] no explanation as to how these state laws differ and include[d] no facts showing how Defendant allegedly violated each of these laws"). Here, similarly, Plaintiffs make only cursory reference to each state's statute by citing to the statutes without explaining how each state's laws differ from one another or how FYF violated each specific statute. *See* SAC ¶¶ 154–64. This failure is critical because, for example, "the other 49 states' consumer protection statutes differ significantly from California's UCL, FAL, and CLRA." *Darisse* v. *Nest Labs, Inc.*, No. 14-CV-01363, 2016 WL 4385849, at *9 (N.D. Cal. Aug. 15, 2016). As such, the SAC fails to satisfy the requirements under Rule 8(a)(2) for each alleged state law violation and the claim must be dismissed. *See Kandel*, 721 F. Supp. 3d at 307; Fed. R. Civ. P. 8(a)(2).[6]

## B.     It Is Facially Implausible for Plaintiffs' Allegations to Satisfy Rule 23

The 50-state claim alleged on behalf of a nationwide class must also be dismissed because it is facially implausible that this claim can satisfy the Rule 23 requirements, even after class discovery, due to the arbitrability of putative class members' claims and differences across state consumer protection laws. *See Jung* v. *Gina Grp., LLC*, No. 19-CV-8624, 2020 WL 3640048, at *4 (S.D.N.Y. July 6, 2020) (Vyskocil, J.) ("The Court may dismiss class claims at [the pleading]

---

[6]    Because these allegations fail to satisfy Rule 8, they are necessarily insufficient under Rule 9(b), which is applicable to certain state consumer protection statutes. *See, e.g.*, *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450, 2015 WL 7018369, at *15–18 (S.D.N.Y. Nov. 12, 2015) (Rule 9(b) applied to consumer protection claims sounding in fraud for Connecticut, Florida, Illinois, Minnesota, and Pennsylvania).

stage only where it is facially implausible that the plaintiff could, after discovery, meet the Rule 23 requirements of numerosity, commonality, typicality, and adequacy of representation."); *Borgese* v. *Baby Brezza Enters. LLC*, No. 20-CV-1180, 2021 WL 634722, at *4 (S.D.N.Y. Feb. 18, 2021) (holding that class allegations should be stricken at pleading stage when "it is clear from the pleadings that the certification requirements cannot be met").

### 1.    <u>Issues of Arbitrability</u>

The 50-state claim should be dismissed because some putative class members—through actual or constructive notice of FYF's Terms of Service when ordering on FYF—are subject to the arbitration agreement and class waiver contained therein.  *See* Ex. 1 at 8–10; *McDougall* v. *Samsung Elecs. Am., Inc.*, No. 23-cv-168, 2023 WL 6445838, at *3 (S.D.N.Y. Oct. 3, 2023) (a website user may be subject to an arbitration agreement contained in the terms of service based on actual or inquiry notice).  Insofar as Plaintiffs allege that FYF did not put consumers "on inquiry or constructive notice" of the Terms of Service, SAC ¶ 94, any dispute as to the enforceability of the arbitration agreement with respect to any putative class members only highlights the defects of the putative class with respect to the Rule 23 requirements, as "[t]he necessary individualized determination of the enforceability of [an arbitration] provision militates against a finding of commonality sufficient to satisfy Rule 23(a)(2)."  *Passa* v. *City of Columbus, OH*, No. 03-CV-81, 2010 WL 1372455, at *7 (S.D. Ohio Mar. 30, 2010);  *Spotswood* v. *Hertz Corp.*, No. CV-16-1200, 2019 WL 498822, at *9 (D. Md. Feb. 7, 2019).  And, regardless if the named Plaintiffs are bound by the arbitration agreement, their claims lack typicality because the putative class includes members subject to arbitration agreements.  The named Plaintiffs therefore "cannot adequately represent the interests of those putative class members who are potentially bound by the arbitration and class action waiver provisions." *See Jensen* v. *Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123, 125 (E.D.N.Y. 2019); Fed. R. Civ. P. 23(a)(3), 23(a)(4).

## 2.    Differences in State Consumer Protection Laws

The 50-state claim should also be dismissed because the putative nationwide class cannot satisfy the Rule 23(b)(3) predominance requirement due to significant variations in the state consumer protection laws. *See Borgese*, 2021 WL 634722, at *4 (striking class allegations where the complaint failed to allege common legal issues that satisfied Rule 23(b)(3)). Indeed, requisite elements of the consumer protection claims (e.g., scienter, reliance, pre-suit notice, causation, damages) differ significantly from state to state. *See, e.g.*, *Mazza* v. *Am. Honda Motor Co*., 666 F.3d 581, 591 (9th Cir. 2012) (California does not require scienter; Colorado, New Jersey, and Pennsylvania do); *D'Pergo Custom Guitars, Inc.* v. *Sweetwater Sound, Inc.*, 561 F. Supp. 3d 114, 120 (D.N.H. 2021) (New Hampshire adopts "rascality test"), *aff'd,* 111 F.4th 125 (1st Cir. 2024); *Beegal* v. *Park West Gallery*, 394 N.J. Super. 98, 126 (App. Div. 2007) (noting differences among state consumer protection law, including the right to bring private class actions and damages); Tex. Bus. & Com. Code § 17.501(a) (pre-suit notice required).

These state law variations mean that, regardless of what is propounded during class discovery, Plaintiff will be unable to satisfy the Rule 23(b)(3) predominance requirement. Federal courts around the country have stricken or dismissed similar class claims for this very reason. *See, e.g.*, *Borgese*, 2021 WL 634722, at *4 ("[P]utative class actions involving the laws of multiple states are often not properly certified pursuant to Rule 23(b)(3) because variation in the legal issues to be addressed overwhelms the issues common to the class." (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 126–27 (2d Cir. 2013))); *Elson* v. *Black*, 56 F.4th 1002, 1007 (5th Cir. 2023) ("variations in state law . . . 'swamp any common issues and defeat predominance'" in striking multi-state class allegations (citation omitted)).

## CONCLUSION

For the reasons set forth above, FYF's motion to dismiss should be granted.

Dated: September 5, 2025                    Respectfully submitted,


                                           PAUL, WEISS, RIFKIND,
                                           WHARTON & GARRISON LLP

                                           */s/ Katherine B. Forrest*
                                           Katherine B. Forrest
                                           Robert Y. Sperling
                                           Staci Yablon
                                           Xinshu Sui
                                           1285 Avenue of the Americas
                                           New York, New York 10019-6064
                                           (212) 373-3000
                                           kforrest@paulweiss.com
                                           rsperling@paulweiss.com
                                           syablon@paulweiss.com
                                           xsui@paulweiss.com

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1. I relied on the word count of the word-processing system used to prepare the document.  The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 8,700 words.


*/s/ Katherine B. Forest*___
Katherine B. Forrest