# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TREVOR WALTERLAKES, and ANTHONY GUNZL, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>FROM YOU FLOWERS, LLC,<br><br>    Defendant. | Case No. 1:25-cv-00867-MKV |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................................ 1

II.    FACTS ............................................................................................................... 2

III.    LEGAL STANDARD ......................................................................................... 4

IV.    ARGUMENT ...................................................................................................... 5

    A.    The Court has subject matter jurisdiction. ............................................. 5

        1.    Because Plaintiffs suffered an injury-in-fact, they have Article III standing to pursue their claims. ................................................................. 5

    B.    Because Plaintiffs pleaded credible threats of future harm, they have Article III standing to seek an injunction.* ........................................................ 6

        1.    FYF "cannot be deceived twice" argument applies *Barilla* to a fundamentally different type of harm. ....................................... 7

        2.    Plaintiffs have alleged concrete plans based on recurring consumer need and Defendant's market dominance. .......................................... 8

        3.    Plaintiffs have alleged actual, not speculative future harm. .............. 9

    C.    Plaintiff Walterlakes' California claims are adequately pled. ............... 10

        1.    Plaintiff Walterlakes adequately pleads California consumers are likely to be deceived. ............................................................................... 10

        2.    Reliance is not a barrier to any of the California Claims. ................... 13

        3.    The Claims under the UCL unfairness prong are adequately pled.* ........ 13

    D.    Plaintiff Gunzl's New York claims are adequately pled. ...................... 14

        1.    Plaintiff Gunzl adequately pleads New York consumers are likely to be deceived. ....................................................................................... 14

        2.    Plaintiff Gunzl alleges a cognizable injury. ..................................... 17

    E.    FYF'S voluntary payment affirmative defense is inapplicable to statutory claims. ............................................................................................. 20

    F.    It is premature to dismiss Plaintiffs' claims for equitable remedies. .................... 21

    G.    Plaintiffs' claims on behalf of the Multi-State Class are adequately pled. ........... 23

V.    CONCLUSION ................................................................................................. 25

**\*Argument not included in Defendant's pre-motion letter.**

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page No.**

*Am. Airlines, Inc. v. Despegar.com USA, Inc.*,
  No. 13-22773-CIV-ALTONAGA,
  2013 U.S. Dist. LEXIS 201682 (S.D. Fla. Nov. 13, 2013) ....................................................11

*Am. Freedom Def. Initiative v. Metro. Transp. Auth.*,
  815 F.3d 105 (2d Cir. 2016) .........................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................4

*Bautista v. Valero Mktg. & Supply Co.*,
  No. 15-cv-05557-RS,
  2018 U.S. Dist. LEXIS 221854 (N.D. Cal. 2018) .................................................21

*Belcastro v. Burberry Ltd.*,
  No. 16-CV-1080 (VEC),
  2017 U.S. Dist. LEXIS 26296 (S.D.N.Y. Feb. 23, 2017) ......................................19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................4, 5

*Bennett v. Spear*,
  520 U.S. 154 (1997).......................................................................................................6

*Berni v. Barilla S.P.A.*,
  964 F.3d 141 (2d Cir. 2020) ....................................................................................7, 8

*Berryman v. Reading Int'l, Inc.*,
  763 F. Supp. 3d 596 (S.D.N.Y. 2025) ..................................................................5, 8

*Binder v. MichaelKors (USA), Inc.*,
  No. 23 Civ. 3941 (DEH),
  2024 U.S. Dist. LEXIS 115818 (S.D.N.Y. June 28, 2024) ...................................19

*Borgese v. Baby Brezza Enters. LLC*,
  No. 20 Civ. 1180 (VM),
  2021 U.S. Dist. LEXIS 30216 (S.D.N.Y. Feb. 18, 2021) ......................................24

*Bourbia v. S.C. Johnson & Sons, Inc.*,
  375 F. Supp. 454 (S.D.N.Y. Mar. 21, 2019) .........................................................14

*Broder v. MBNA Corp.*,
  281 A.D.2d 369 (App. Div. 1st Dept. 2001) ......................................................16, 17

*Cel-Tech Comm., Inc. v. Los Angeles Cullar Tel. Co.*
  20 Cal. 4th 163 (1999) .................................................................................................21

*Charbonnet v. Omni Hotels & Resorts*,
  No.: 20-cv-01777-CAB-DEB,
  2020 U.S. Dist. LEXIS 236726 (S.D. Cal. Dec. 16, 2020).............................12, 13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398, 409 (2013)................................................................................................10

*Coleman v. Mondelez Int'l Inc.*,
554 F. Supp. 3d 1055 (C.D. Cal. 2021)..........................................................................23

*Curtis v. Irwin Indus.*,
913 F.3d 1146 (9th Cir. 2019) ........................................................................................12

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ...........................................................................................8

*Davis v. Hain Celestial Grp., Inc.*,
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..............................................................................7

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025)..........................................................................................25

*Demarco v. Bay Ridge Car World, Ltd.*,
169 A.D.2d 808, 565 N.Y.S.2d 176 (App. Div. 2nd Dept. 1991) ...........................................17

*Dhinsa v. Krueger*,
917 F.3d 70 (2d Cir. 2019) ...............................................................................................5

*Dimond v. Darden Rests., Inc.*,
No. 13 Civ. 5244 (KPF),
2014 U.S. Dist. LEXIS 94004 (S.D.N.Y. July 9, 2014)..........................................................17

*Dorce v. City of New York*,
2 F.4th 82 (2d Cir. 2021) ..................................................................................................9

*Dunham v. Sherwin-Williams Co.*,
636 F. Supp. 3d 308 (N.D.N.Y. 2022) ............................................................................18

*Duran v. Henkel of Am., Inc.*,
450 F. Supp. 3d 337 (S.D.N.Y. 2020) .............................................................................15

*Ebin v. Kangadis Food Inc.*,
No. 13 Civ. 2311 (JSR),
2013 U.S. Dist. LEXIS 174174 (S.D.N.Y. Dec. 9, 2013)..........................................................19

*Emilee Carpenter, LLC v. James*,
107 F.4th 92 (2d Cir. 2024)............................................................................................24

*FEC v. Ted Cruz for Senate*,
596 U.S. 289 (2022)..........................................................................................................6

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ...........................................................................................15

*Fishon v. Peloton Interactive, Inc.*,
620 F. Supp. 3d 80 (S.D.N.Y. 2022) ...............................................................................21

*French v. Banana Republic LLC,*
   No. 24-cv-05216-VC,
   2024 U.S. Dist. LEXIS 200279 (N.D. Cal. Nov. 4, 2004) ...................................................22

*Gaidon v. Guardian Life Ins. Co. of Am.,*
   94 N.Y.2d 330 (1999) ........................................................................................................15

*Gill v. Chipotle Mexican Grill, Inc.,*
   No. 8:24-cv-01672-FWS-JDE,
   2025 U.S. Dist. LEXIS 98878 (C.D. Cal. May 19, 2025) ...................................................10

*Guzman v. Polaris Indus.,*
   49 F.4th 1308 (9th Cir. 2022) ........................................................................................22, 23

*Harris v. Las Vegas Sands L.L.C.,*
   No. CV 12-10858 DMG (FFMx),
   2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013) .................................................12

*Harvey v. World Mkt., LLC,*
   No. 25-cv-01242-CRB,
   2025 U.S. Dist. LEXIS 89297 (N.D. Cal. May 9, 2025) ..........................................10, 12, 13

*In re Bookends & Beginnings LLC,*
   No. 21-cv-02584 (GHW) (VF),
   2022 U.S. Dist. LEXIS 161695 (S.D.N.Y. Sep. 7, 2022) ...................................................24

*In re Nurture Baby Food Litig.,*
   No. 1:21-cv-01217-MKV,
   2025 U.S. Dist. LEXIS 56512 (S.D.N.Y. Mar. 26, 2025) ...................................................22

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) .......................................................................................................14

*ITT Cont'l Baking Co. v. F.T.C.*
   532 F.2d 207 (2d Cir. 1976) ................................................................................................9

*John v. Whole Foods Mkt. Grp., Inc.,*
   858 F.3d 732 (2d Cir. 2017) ........................................................................................5, 6, 9

*JPMorgan Chase & Co.,*
   345 F. Supp. 3d 122 (S.D.N.Y. 2018) ..................................................................................6

*Jung v. Gina Grp., LLC,*
   No. 19-cv-8624 (MKV),
   2020 U.S. Dist. LEXIS 118048 (S.D.N.Y. July 6, 2020) ...................................................24

*Kahn v. Walmart Inc.,*
   107 F.4th 585 (7th Cir. 2024) ........................................................................................11, 12

*Karlin v IVF Am.,*
   93 NY2d 282 (1999) ..........................................................................................................15

*Kraus v. Snow Teeth Whitening LLC*,
No. 20-cv-6085 (JMA) (ST),
2022 U.S. Dist. LEXIS 167176 (E.D.N.Y. Sep. 15, 2022) ........................................................5

*Langan v. Johnson & Johnson Consumer Cos.*,
897 F.3d 88 (2d Cir. 2018) ........................................................................24

*La Rosa v. SPD Swiss Precision Diagnostics GmbH*,
No. 24-1575-cv,
2025 U.S. App. LEXIS 6253 (2d Cir. Mar. 18, 2025) ...........................................15

*Lewis v. Hertz Corp.*,
181 A.D.2d 493, 581 N.Y.S.2d 305 (App. Div. 1st Dept. 1992)..............................17

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........................................................................................6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)........................................................................................9

*MacDonell v. PHH Mortg. Corp.*,
45 A.D.3d 537 (2007) ..................................................................................20

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018) .......................................................................16

*MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*
861 F.3d 40 (2nd Cir. 2017) .........................................................................9

*Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC*,
No. 17-CV-5376 (PKC),
2018 WL 3650135 (S.D.N.Y. July 31, 2018),
*aff'd*, 756 F. App'x 71 (2d Cir. 2019) .......................................................10

*Morgulis v. Bus Patrol Am. LLC*,
No. 24 Civ. 113 (ER),
2024 U.S. Dist. LEXIS 136982 (S.D.N.Y. 2024) ......................................21

*Nationwide Biweekly Admin., Inc. v. Superior Court*,
9 Cal. 5th 279 (2020) ................................................................................20

*New Prime Inc. v. Oliveira*,
586 U.S. 105, 139 S. Ct. 532 (2019)..........................................................25

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995)....................................................................................15

*Rector v. Walmart Inc.*,
No.: 24-658 (RC),
2025 U.S. Dist. LEXIS 37595 (D.D.C. Mar. 3, 2025)...............................11

*Rodriguez v. Hanesbrands Inc.*,
No. 17-CV-1612 (DLI),
2018 U.S. Dist. LEXIS 28002 (E.D.N.Y. Feb. 20, 2018) .........................18

*Rothstein v. UBS AG,*
    708 F.3d 82 (2d Cir. 2013) ...................................................................................6

*Salhotra v. Simpson Strong-Tie Co., Inc.,*
    No. 19-cv-07901-TLT,
    2024 U.S. Dist. LEXIS 230728 (N.D. Cal. Nov. 4, 2024) ......................................14

*Sands v. Ticketmaster-New York,*
    207 A.D.2d 687 (App. Div. 1st Dept. 1994) ...............................................12, 16, 17

*Sava v. 21st Cent. Spirits, LLC,*
    No. 22 C 6083,
    2024 WL 3161625 (N.D. Ill. June 25, 2024) .........................................................25

*Small v. Lorillard Tobacco Co.,*
    94 N.Y.2d 43 (1999) ...................................................................................17, 19

*Sonner v. Premier Nutrition Corp.,*
    971 F.3d 834 (9th Cir. 2020) ...............................................................................23

*Spagnola v. Chubb Corp.,*
    574 F.3d 64 (2d Cir. 2009) ...................................................................................21

*State by Lefkowitz v. Colo. State Christian Coll. of Church of Inner Power, Inc.,*
    346 N.Y.S.2d 482 (Sup. Ct. 1973) .......................................................................24

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ............................................................................................9

*Tyrnauer v. Ben. & Jerry's Homemade, Inc.,*
    739 F. Supp. 3d 246 (D. Vt. 2024) .........................................................................6

*Vaccariello v. XM Satellite Radio, Inc.,*
    295 F.R.D. 62 (S.D.N.Y. 2013) .............................................................................7

*Vasell v. SeatGeek, Inc.,*
    No. 24-cv-00932 (NCM) (JRC),
    2025 U.S. Dist. LEXIS 9481 (E.D.N.Y. Jan. 17, 2025) ...............................5, 8, 21

*Veera v. Banana Republic, LLC,*
    6 Cal. App. 5th 907 (2016) .............................................11, 12, 13, 15, 20

*Watts v. Jackson Hewitt Tax Serv.,*
    579 F. Supp. 2d 334 (E.D.N.Y. 2008) ..................................................................18

*Williams v. Gerber Prods. Co.,*
    552 F.3d 934 (9th Cir. 2008) ...............................................................................10

*Woodford v. Cmty. Action Agency of Greene County,*
    239 F.3d 517 (2d Cir. 2001) ..................................................................................4

*Zuckerman v. BMG Direct Mktg.,*
    290 A.D.2d 330 (App. Div. 1st Dept. 2002) ...........................................................17

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SAC

**Federal Statutes**

9 U.S.C. § 2 ...................................................................................................................25

**State Statutes**

815 ILCS 510/2(a)(9) .....................................................................................................25

Cal. Civ. Code § 22.2 .....................................................................................................20

Cal. Civ. Code §§ 1750 *et seq.* .................................................................................11, 24

Nev. Rev. Stat. § 598.0915(9) ........................................................................................25

N.Y. Const. art I 14 ........................................................................................................20

NY GBL § 349 ......................................................................................................... *passim*

NY GBL § 350 ......................................................................................................... *passim*

**Other Authorities**

Cal. S.B. 478, 2023-2024 Leg., Reg. Sess. (Cal. 2023) ................................................11

## I.    INTRODUCTION

Defendant From You Flowers LLC ("FYF") sells floral delivery services online using a drip-pricing scheme that has bilked consumers out of millions of dollars. Using deceptively low initial prices, consumers are lured to FYF's website to order flowers, where they are not exposed to any conspicuous information about additional fees.  Once they begin their order, FYF sends them through a long and complicated process to place the order. After overtaxing them with decisions, options to upgrade their purchases, and other forms to complete, spread across numerous webpages, FYF hits them with a final price – which suddenly includes additional previously unknown fees ("Surprise Fees"). Exhausted and frustrated consumers like Plaintiffs Trevor Walterlakes of California and Anthony Gunzl of New York give up and acquiesce – exactly as FYF intended. And FYF knows that its lengthy process exhausts and confuses consumers, and social science research confirms that drip-pricing schemes like this confuses consumers and causes them to pay more than they wanted or agreed.

FYF ignores these well-pled allegations, and argues that it did nothing wrong because the Plaintiffs saw the final price. Relying on its point-of-sale fee reveal, FYF argues Plaintiffs suffered no Article III injury, could not have been reasonably deceived, did not rely on any misrepresentation, and voluntarily paid the fees. In essence, it asks this Court to conclude that the final price – displayed on the screen only after consumers enter their credit card – is a consumer-protective guardrail, and not an essential feature of a deceptive scheme to extract additional money from consumers.

That is not how the law works. There is standing because Plaintiffs lost money on FYF's website, and the Supreme Court has held that Article III imposes no reliance requirement. That said, reliance under California's consumer protection statutes is readily met, as a controlling decision from the California Court of Appeals makes reliance a more flexible concept than FYF admits. New York law, which does not require reliance, permits these claims. And both states do not allow common law doctrines to subvert legislative goals.

FYF moves to dismiss on two other grounds. As to Walterlakes claims under California law, FYF asks to dismiss the equitable statutes, arguing no adequate remedy at law. But there are myriad reasons why doing so in this case is premature. And FYF moves to dismiss nationwide class claims, but this too finds no legal support.

This Court should deny Defendant's motion in full.

## II.    FACTS

FYF is a large e-commerce company that sells flower delivery services. It entices consumers like Plaintiffs Walterlakes and Gunzl into purchasing the delivery of floral arrangements from its website by advertising artificially low prices for their services while including undisclosed Surprise Fees on every purchased product. Second Amended Complaint ("SAC") ¶¶ 2–3. To trick consumers into paying more than the advertised price for its floral deliveries, FYF uses an intentionally lengthy and confusing purchase process that consumers must complete before making the purchase ("Purchase Flow"). *Id.* ¶ 39 and Ex. A. By doing this, FYF is able to obscure the true cost of its floral arrangements until consumers have invested so much time in the ordering process that they are likely to succumb to the surprise higher price at the end. *Id.* ¶¶ 39–87. This lengthy, multi-step Purchase Flow requires numerous decisions and inputs from the consumer, including, but not limited to:

(a)  selecting a particular arrangement at its advertised price (that does not include fees) from hundreds of listings;

(b)  evaluating the intended arrangement and determining whether they would prefer the Regular, Deluxe, or Premium version;

(c)  evaluating whether they would like to include an optional add of  mylar balloons, chocolates, and teddy bears;

(d)  considering delivery date and whether to pay an extra $2.99 high traffic delivery days.

(e)  selecting a card type and whether to add a custom note

(f)  considering paying additional $4.99 for delivery before 12 PM in recipient's time zone;

(g) selecting payment method;

(h) considering whether to input a promotional code

(i) finally, considering whether to exit out of the process, and unknowingly receiving an additional discount selecting whether they would like FYF to store their payment information.

*Id*. ¶¶ 3, 39–87. Only after completing this long Purchase Flow does FYF disclose that that the true cost of the purchase will greatly exceed the advertised price. SAC ¶¶ 70–87.  Researchers have identified a number of psychological factors at play that cause consumers to be susceptible to "drip-pricing" schemes. *Id*. ¶¶ 20–33. The psychological tricks work: by the time the deception is revealed, in the form of an inflated final price, Plaintiffs and consumers like them are invested in the decision.

FYF's pricing scheme is designed to convince consumers shopping for flower delivery that its services are cheaper than they really are, and then burn through consumers' time and hassle them into acquiescing to the higher price. *Id*. ¶¶ 5, 91. If consumers leave the process once they learn of the Surprise Fee, FYF sends a promotional email offering to waive it if they finish the order. *Id.* ¶ 82. Thus, while FYF describes the fee as a "delivery fee," and consumers believe it is mandatory, in reality, it is only mandatory for those it successfully tricks. *Id.* Nor is it a real delivery fee, as it is not tied to the cost of delivery. *Id.*  ¶¶ 81-82.

Walterlakes and Gunzl were both harmed by FYF's bait-and-switch advertising tactics, a practice which continues unabated. *Id.* ¶¶ 158(d). Plaintiffs each searched for floral deliveries from their homes in California and New York this past winter. *Id*. ¶¶ 114, 127. Each saw the initially advertised price for their respective bouquets on the FYF landing page—for Walterlakes it was $64.99, for Gunzl it was $49.99—and both initiated the Purchase Flow in respective attempts to transact at these prices. *Id*. ¶¶ 114, 127 Neither Plaintiff saw any indication of FYF's additional fees on the home page or throughout the Purchase Flow, and both expected to pay only the advertised price plus tax.  ¶¶ 113-25; 126-38.  Both were hit with Surprise Fees. SAC ¶¶ 122-23; 135. Plaintiffs had both invested significant time into the Purchase Flow and were led to believe

their purchases would be one price and paid the Surprise Fees. Plaintiffs were not informed that had they abandoned their carts, the Suprise Fees would be waived. *Id.* ¶¶ 123, 136.

Accordingly, Walterlakes and Gunzl bring a putative class action alleging that FYF's deceptively advertised floral delivery prices constitute an illegal bait-and-switch and drip-pricing scheme. *Id.* ¶¶ 113–38. Together, they seek to represent a nationwide class, asserting claims of materially similar consumer protection laws of the 50 states and the District of Columbia ("Multi-State Claims"). *SAC* ¶¶ 153–64. In addition, Walterlakes seeks to represent a subclass of California consumers to pursue claims under California's Unfair Competition Law (the "UCL") (Cal. Bus. & Prof. Code § 17200); California's False Advertising Law (the "FAL") (Cal. Bus & Prof. Code § 17500); California's Consumer Legal Remedies Act (the "CLRA") (Cal. Civ. Code §§ 1750 *et seq.*) (collectively, "California Claims"). *Id.* ¶¶ 165–177; 78–81; 182-207. Gunzl seeks to represent a subclass of New York purchases to pursue claims under New York's Deceptive Acts and Unfair Trade Practices Act (New York's Gen. Bus. Law § 349); and New York's False Advertising Act (New York's Gen. Bus. Law § 350) (collectively "New York Claims"). *Id.* ¶¶ 208–16, 217–225.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible on its face "when the pleaded [facts] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A plaintiff is not required to prove her case at the pleadings stage." *Woodford v. Cmty. Action Agency of Greene County,* 239 F.3d 517, 526 (2d Cir. 2001).

## IV.    ARGUMENT

### A.    The Court has subject matter jurisdiction.

#### 1.    Because Plaintiffs suffered an injury-in-fact, they have Article III standing to pursue their claims.

"Monetary loss" is a quintessential injury-in-fact. *Dhinsa v. Krueger*, 917 F.3d 70, 78 (2d Cir. 2019). Here, Plaintiffs each allege that FYF's drip pricing scheme caused them to purchase products they would not have purchased or overpay for products they bought. *See* SAC ¶¶ 123, 136, 160, 173, 181, 206, 215, 224. These allegations satisfy the injury-in-fact prong of Article III's standing requirements. *See Vasell v. SeatGeek, Inc.,* 2025 U.S. Dist. LEXIS 9481, at *28 (E.D.N.Y. Jan. 17, 2025) (in deceptive pricing case, finding "allegations of paying an unlawful fee to transact with defendant meet the low threshold required to sufficiently plead concrete economic injury").

Frustrated by this well-settled principle, FYF divines rules for pleading an Article III injury by referencing *only* product labeling cases, and then declaring that because Plaintiffs do not allege the sorts of facts that one would expect to see in a product labeling case, there is no injury. Mot. at 8-9. But Plaintiffs are not claiming that FYF mislabeled a product; they are claiming FYF engaged in deceptive pricing by enticing customers with an advertised low price, then using a psychologically manipulative multi-step Purchase Flow to trick them into paying a much higher price. SAC ¶¶ 39. Thus, the concrete, economic injury is the higher-than-advertised price they paid. *See Vasell,* 2025 U.S. Dist. LEXIS 9481, at *28; *Berryman v. Reading Int'l, Inc.,* 763 F. Supp. 3d 596, 606 (S.D.N.Y. 2025) (finding the failure to disclose fees "at the outset" to be an economic injury notwithstanding subsequent disclosure); *Kraus v. Snow Teeth Whitening LLC,* 2022 U.S. Dist. LEXIS 167176, at *9 (E.D.N.Y. Sep. 15, 2022) ("In a false-advertising case, the injury is the purchase price.") (internal quotations omitted).

Nevertheless, FYF contends that there can be no injury-in-fact unless Plaintiffs relied on a misrepresentation or omission before the point of sale *and* did not learn the truth until after the point of sale. Mot. at 8-9. But an injury-in-fact is, in fact, an *injury*; how the injury was incurred is irrelevant. *See John v. Whole Foods Mkt. Grp., Inc.,* 858 F.3d 732, 736 (2d Cir. 2017) ("[N]o

one disputes that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact."). While some district courts have suggested that reliance is a necessary element of injury-in-fact,[1] those holdings are at odds with the Supreme Court, which has stated that even the lower standard of "[p]roximate causation is not a requirement of Article III standing." *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 134, n.6 (2014).

Nor will FYF find support for its arguments under Article III's traceability requirement, which requires only "a causal nexus between the defendant's conduct and the injury." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (internal quotations omitted). This low bar considers whether the challenged acts and injuries bear some connection to the defendants in the action. FYF is "wrong[]" to demand standing require an allegation that "the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). Indeed, the Supreme Court recently reiterated that "injuries that a party purposely incurs" can still satisfy traceability. *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 290 (2022). Thus, there is no jurisdictional hurdle here, as Plaintiffs allege they lost money on FYF's website because of FYF's deceptive low price and Purchase Flow. That FYF believes Plaintiffs are at fault is a defense to the claims, not a basis to deny jurisdiction. *See JPMorgan Chase & Co.*, 345 F. Supp. 3d 122, 156 (S.D.N.Y. 2018) ("The standard for Article III standing is not whether . . . the alleged injury is *plausibly* fairly traceable, but, rather, whether the injury is *possibly* fairly traceable.").

**B.    Because Plaintiffs pleaded credible threats of future harm, they have Article III standing to seek an injunction.***

FYF challenges standing to seek an injunction, an argument that appears nowhere in their pre-motion letter. While this Court can consider Rule 12(b)(1) arguments at any time, FYF's failure

---

[1] For example, FYF cites to *Tyrnauer v. Ben. & Jerry's Homemade, Inc.*, 739 F. Supp. 3d 246 (D. Vt. 2024), which incorrectly claims "a plaintiff may not allege standing based upon false advertising without identifying the false representation upon which he or she relied in making a product purchase." *Id.* at 258. *Tyrnauer* misconstrues *John*, 858 F.3d 732, in which the Second Circuit narrowly defines injury as an injury. *Id.* at 736. *John* concerned whether the plaintiff "allege[d] that *he personally* overpaid," as the complaint used circumstantial evidence to show what he purchased suffered from the challenged practice. *Id.* at 737 (emphasis added).

to comply with this Court's order should not deprive Plaintiffs of an opportunity to cure, to the extent any of the below arguments require further allegations to survive dismissal.

## 1. FYF "cannot be deceived twice" argument applies *Barilla* to a fundamentally different type of harm.

FYF first invokes what it characterizes as the "well-settled" *Berni v. Barilla S.P.A.* law; a past injury due to lack of knowledge cannot reoccur because awareness "eradicates the likelihood of future injury predicated on the same conduct." Mot. at 10; *Barilla*, 964 F.3d 141, 148 (2d Cir. 2020). Under FYF's reading of *Barilla*, Plaintiffs' awareness of the delivery fees diminishes any possibility of being 'misled' again when making a future purchase. *Id.* In essence, FYF boils *Barilla* down to the simplified maxim: fool me once, shame on you, fool me twice, shame on me. This simplified application of *Barilla* strips the decision of its critical product labeling context, where the court's holding turned on the fact that once consumers learned the true quantity-to-package ratio for the pasta boxes, they had complete knowledge and would "not again be under the illusion" of the box contents. *Id.* at 148. Plaintiffs allege an entirely different injury from *Barilla*: ongoing and fluctuating Surprise Fees, such that FYF might "bait" consumers with fluctuating prices based on when consumers decide to abandon the confusing Purchase Flow. SAC ¶¶ 82-84, 123, 136.[2] Discovering FYF charged a $14.99 Surprise Fee at the final stage of one transaction provides no useful information about the actual cost of any specific future transaction because fees could be eliminated, reduced, increased, or change based on certain conditions. *Id.* ¶¶ 82, 129. Indeed, FYF's own admission that it "has begun changing its purchase flow in response to this lawsuit" underscores why consumers do not have the "complete" knowledge found in *Barilla.* Mot. at 10.[3] Consumers can see changes in pasta packaging over time, but FYF can

---

[2] Likewise, FYF's citations to *Vaccariello v. XM Satellite Radio, Inc*., 295 F.R.D. 62, 68 (S.D.N.Y. 2013) and *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) are irrelevant as they concern product labeling claims where the plaintiff was aware of the misrepresentations.

[3] Additionally, the Second Circuit has consistently found that voluntary cessation of a practice does not moot a claim for injunctive relief because defendant can restart action at any time. *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016).

endlessly modify its digital platform to modify its fee structures and disclosure practices, including hiding potential tariff-related costs into fees. *See id.* ¶¶ 90, 124, 137. But absent an injunction requiring the conspicuous disclosure of all fees at an early stage in the transaction, consumers will not know what charges might await them until they complete the entire Purchase Flow.[4]

Moreover, even setting aside *Barilla's* inapplicability, Plaintiffs need not allege they will experience an identical violation of the CAL, FAL, UCL, or NYGBL to constitute future harm within the meaning of Article III. Rather, as discussed in Section IV.A., Plaintiffs need only allege they will suffer *some* injury, such as lost money, traceable to FYF's conduct. Here, the threat of future injury persists because FYF's Purchase Flow ensures consumers never know their final charges until checkout. SAC ¶¶ 78, 91, 123-124, 137, A consumer could navigate FYF's website, accept the anticipated $15 fee, only to discover at checkout the fee has jumped to $25. The fact that Plaintiffs potentially know the process but still risk overpaying due to FYF's convoluted Purchase Flow constitutes an injury-in-fact traceable to FYF's website.[5]

### 2. Plaintiffs have alleged concrete plans based on recurring consumer need and Defendant's market dominance.

Plaintiffs explicitly allege that they "[continue] to desire to purchase floral arrangements and/or gift item deliveries generally, *and from Defendant*, who controls a sizable portion of the floral market." SAC ¶¶ 124, 137. Yet FYF contends that Plaintiffs lack concrete plans to use its services again, but their flower purchases revolve around routine, time-sensitive, recurring life

---

[4] In that sense, the facts here more closely track those in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), where the court found standing for injunctive relief, where the plaintiff alleged the flushable wipes she purchased were not flushable, and in the future, she had "no way of determining whether the representation 'flushable' is in fact true." *Id.* at 970-91.
[5] FYF may rely on *Vasell v. SeatGeek, Inc.*, 2025 U.S. Dist. LEXIS 9481 (E.D.N.Y. Jan. 17, 2025), which applied *Barilla* to dismiss injunctive relief claims against an online platform. *Id.* at *33. However *Vasell* does not fully consider the nature of "future harm" as proposed here.

events. SAC ¶ 114, 127. And FYF's market dominance transforms these recurring needs into even more likely future encounters. *Id.*[6]

Moreover, Plaintiffs allege that consolidation in the floral market makes it likely that FYF's market dominance will grow, and it may create, consolidate with, and/or acquire other competing brands and flower wire services, allowing it to re-institute its drip pricing scheme via potential alter egos and/or newly acquired brands. SAC ¶ 91. Indeed, FYF has already merged with FTD, LLC, which in turn sells floral deliveries under the FTD brand and the ProFlowers brand, where similar drip-pricing practices spurred a pending lawsuit. *Id.* Absent an injunction to stop FYF from drip-pricing, it could simply halt the drip-pricing practice on fromyouflowers.com and simply hide behind a new brand name and URL to do the same thing. *Id. Cf. ITT Cont'l Baking Co. v. F.T.C.* 532 F.2d 207, 222 (2d Cir. 1976) (authorizing an injunction to prevent a deceptive practice which could be repeated in advertising other products).

### 3. Plaintiffs have alleged actual, not speculative future harm.

Finally, FYF argues that Plaintiffs alleged harm is "entirely speculative." Mot. at 11. But injury-in-fact is a "low threshold" requiring only a "personal stake in the outcome of the controversy." *John*, 858 F.3d at 736 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Future injury suffices if either the threatened injury is "certainly impending" *or* there is "substantial risk" of harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013). Harm need not be "literally certain." *Id.* The Second Circuit considers "substantial risk" separately from "certainly impending," *See Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021). Plaintiffs satisfy this standard through a direct causal chain; they will need flowers for predictable occasions,

---

[6] *MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy* and *Lujan* do not support FYF's position. *MGM* involved a casino developer who merely expressed "interest" in a development opportunity, without concrete plans. 861 F.3d 40, 47-48 (2nd Cir. 2017). Similarly, *Lujan* footnote 2 addresses harm from an "indefinite future" where "acts necessary to make the injury happen are…within the plaintiff's own control." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 n.2 (1992). Here, Plaintiffs do not control when birthdays (or tragedies) occur or which platforms FYF acquires. Their harm flows from FYF's market-dominating practices encountered when meeting unavoidable consumer needs.

FYF controls substantial market share, and FYF continues using drip pricing.[7] *Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC,* 2018 WL 3650135, at *2 (S.D.N.Y. July 31, 2018), *aff'd,* 756 F. App'x 71 (2d Cir. 2019).

### C.    Plaintiff Walterlakes' California claims are adequately pled.

#### 1.    Plaintiff Walterlakes adequately pleads California consumers are likely to be deceived.

To survive a Rule 12(b)(6) motion to dismiss arising out of California and New York's consumer protection statutes, courts consider whether the complaint plausibly alleges that reasonable consumers are likely to be misled, a factual question rarely capable of resolution at the pleading stage. *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938-399 (9th Cir. 2008).

Here, the SAC readily meets the *Williams* standard. It describes an initial browsing process, where products are displayed without any indication of additional fees or conspicuous links to fee information, leading consumers to believe the displayed price is final. SAC ¶¶ 41-44. While the Surprise Fees are disclosed before purchase completion consumers discover them only after completing an elaborate, multi-stage, multi-screen Purchase Flow, with a number of tasks and upgrade options, and after credit card information. *Id.* ¶¶ 45-77. In essence, FYF's Purchase Flow uses drip-pricing to confuse and exhaust consumers, manipulating them into agreeing to pay more than advertised prices. California courts agree that cases involving drip-pricing and surprise fees deceive reasonable consumers. *See Gill v. Chipotle Mexican Grill, Inc.,* 2025 U.S. Dist. LEXIS 98878, at *9 (C.D. Cal. May 19, 2025) (finding it plausible consumers were misled notwithstanding disclosure of additional service fees were disclosed at the point of sale); *Harvey v. World Mkt., LLC*, 2025 U.S. Dist. LEXIS 89297, at *10 (N.D. Cal. May 9, 2025) (upholding nearly identical claim that an initial price that did not include shipping fees was deceptive even though the full cost of the items were disclosed at the end of the transaction); *Veera v. Banana*

---

[7] *Mordy's Appliance Repair Serv. LLC v. Amazon Servs. LLC,* 2018 WL 3650135, at *2 (S.D.N.Y. July 31, 2018), *aff'd,* 756 F. App'x 71 (2d Cir. 2019) is not relevant because it analyzes only the "certainly impending" prong rather than "substantial risk" factor under *Clapper.*

*Republic, LLC*, 6 Cal. App. 5th 907, 918 (2016) (stating that California's consumer protection laws, "requir[e] businesses to disclose the actual prices of items offered for sale, and prohibit[] businesses from using false and deceptive advertising to lure consumers to shop.").[8] Underscoring the Plaintiffs' own allegations as to how they were misled, the SAC includes citations to research finding that drip-pricing strategies utilize psychological phenomenon, such as the fallacy of sunk costs and decision fatigue, to extract higher prices from consumers than they originally agreed to pay. SAC ¶¶ 18-32.

Nevertheless, FYF wrongfully argues that because they disclosed the Surprise Fee prior to the finalization of the transaction, it is implausible as a matter of law that reasonable consumers could be deceived. These arguments should be rejected.

First, FYF ignores Walterlakes' claims under section 1770(a)(29) of the CLRA, which expressly prohibits advertising prices for goods and services that do not include all mandatory fees.[9] This sub-section, also known as the Honest Pricing Law, went into effect last year, and "is intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service." Cal. S.B. 478, 2023-2024 Leg., Reg. Sess. (Cal. 2023). FYF's insistence that California law requires the absence of any pre-purchase disclosure of fees cannot be squared with the plain text of this law.

---

[8] Many other courts, in considering similar claims arising other other state's consumer protection statutes, are in agreement. *See, e.g., Kahn v. Walmart Inc.,* 107 F.4th 585, 600-01 (7th Cir. 2024) ("Plaintiff has also adequately pled that Walmart's price discrepancies constitute a deceptive act or practice even where the consumer discovers the price discrepancy *before* completing a transaction."); *Rector v. Walmart Inc.*, 2025 U.S. Dist. LEXIS 37595, at *20 (D.D.C. Mar. 3, 2025) (denying dismissal of DCCPPA claims where plaintiffs alleged that "placement of shelf prices on items that differed from and were lower than the higher prices charged at the register had a tendency to mislead consumers"); *Am. Airlines, Inc. v. Despegar.com USA, Inc.*, 2013 U.S. Dist. LEXIS 201682, at *26-27 (S.D. Fla. Nov. 13, 2013) ("[Plaintiff] alleges Defendants engage in a deceptive practice of inflating fares by adding undisclosed fees that appear to be part of American's fares and failing to provide consumers with information about those hidden fees and the ability to reject them….Because Defendants' alleged conduct by its very nature relies on deception and misrepresentations, the FDUTPA provides a remedy.").

[9] The new drip-pricing subsection contains exceptions for taxes and postage "reasonably and actually incurred to ship the physical good to the consumer." Cal. Civ. Code § 1770(a)(29). FYF did not contend in its letter brief, nor does it contend here, that this case falls under this exception. And Walterlakes pleads that it does not. *See* SAC ¶ 78, 82.

Second, in passing the Honest Pricing Law, the California legislature stated that drip-pricing was already "prohibited by existing statutes." *Id.* In fact, the California Court of Appeals reversed summary judgment in a CLRA, FAL, UCL case, concluding that preventing actions where deception is revealed before purchase "seems to be at odds with" the California's consumer protection laws. *See Veera*, 6 Cal. App. 5th at 922. Like the plaintiff in *Veera*, Walterlakes brings claims under CLRA's sub-section 1770(a)(9), which prohibits advertising goods and services with the intent not to sell as advertised, and does not impose any pre-sale omission requirement. *See id.* at 921 (stating that such language applied to bait-and-switch schemes, including those leading to a point-of-sale disclosure of a higher than advertised price). *See also Kahn v. Walmart Inc.,* 107 F.4th 585, 600-01 (7th Cir. 2024) (finding a claim that a bait price was switched to a higher price at the point of sale to fall within the scope of an identical provision in Illinois' consumer protection statute).

Finally, FYF's cited cases are distinguishable. *Charbonnet v. Omni Hotel Resorts,* 2020 U.S. Dist. LEXIS 236726 (S.D. Cal. Dec. 16, 2020) involved conspicuous, early disclosure of additional fees. *Id.* at *8. No such allegations exist here. And *Harris v. Las Vegas Sands L.L.C.,* 2013 U.S. Dist. LEXIS 185587 (C.D. Cal. Aug. 16, 2013), also featured an additional fees disclaimer early in the purchase flow. S*ee id.* at 14. Moreover, *Harris* pre-dates *Veera's* controlling appellate decision.[10] FYF offers no explanation for why these outdated district court decisions would preclude Plaintiffs' claims. Nor is there one. And both cases pre-date the Honest Pricing Law, and that claim survives. *See Harvey v. World Mkt., LLC*, 2025 U.S. Dist. LEXIS 89297, at *8-9 (N.D. Cal. May 9, 2025) ("Indeed, applying the Charbonnet . . . court['s] reasoning to section 1770(a)(29) would undermine the very purpose of that provision.").

---

[10] Federal courts "are bound to follow the rulings of intermediate state courts absent convincing evidence that the California Supreme Court would reject those interpretations." *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1155 (9th Cir. 2019) (quotation modified).

### 2.    Reliance is not a barrier to any of the California Claims.

FYF argues that Walterlakes cannot state a claim in light because the point-of-sale fee reveal destroys reliance. *Veera* forecloses this argument, as it holds that "the question of reliance and causation does not rest as a matter of law on whether plaintiffs knew the actual price of the items they purchased at the moment money was exchanged." 6 Cal. App. 5th at 920. The court cautioned that treating the point-of-sale reveal "as solely determinative of reliance and causation ignores the true nature of those elements." *Id*. Instead, *Veera* set forth that "[i]f the reliance on the misleading advertising was a substantial factor in causing plaintiff's decision to buy, the requirements of reliance and causation are met." *Id.* In cases involving point-of-sale price switch, reliance can be shown if "the consumer is influenced by the momentum to buy created by the false advertising, and therefore buys as the inflated price." *Id.* at 921. Walterlakes easily clears this bar.

FYF attempts to distinguish *Veera* by emphasizing the words, "on these facts," but Walterlakes, like the *Veera* plaintiff, there, relied on one price and were told a higher price at the point of sale. Nor is *Veera's* holding is not limited to its specific facts; the court spoke in broad, generic terms of "advertisers," "consumers" and "bait-and-switch" schemes, and warned against construing reliance so narrowly that it would undermine California's consumer protection statutes. To claim that Walterlakes must allege that FYF promised it would deliver orders without a fee, Mot. at 17, when the SAC alleges that he expected to pay the advertised price, SAC ¶ 114, is to make a distinction that ignores the entire case.

Finally, as to the claims under the Honest Pricing Law, one court explained that reliance is presumed in such cases, in light of the fact that requiring reliance after the point-of-sale fee reveal would result in the law having "no practical effect" – an interpretation that should be avoided. *See Harvey*, 2025 U.S. Dist. LEXIS 89297 (N.D. Cal. May 9, 2025).

### 3.    The Claims under the UCL unfairness prong are adequately pled.*

Raising another argument not appearing in its pre-motion letter, FYF contends that Plaintiff's UCL unfairness prong should be dismissed because it overlaps entirely with the UCL

fraudulent claim. This argument should be disregarded. If the court considers it, the holdings in its cases only require dismissal if the UCL deception claim is found to be inadequately pled, and because they are not, the mere duplicative nature of it does not require dismissal.

In any event, the UCL unfairness claim is not duplicative as it does not require reliance. *See, e.g., Salhotra v. Simpson Strong-Tie Co., Inc.,* 2024 U.S. Dist. LEXIS 230728, at *31 (N.D. Cal. Nov. 4, 2024) (observing that unfairness claims do not require reliance where the challenged "conduct is not based on misrepresentations"); *In re Tobacco II Cases,* 46 Cal. 4th 298, 326 n.17 (2009) (noting that reliance is required only where "a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers . . .[and] . . . [t]here are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application") (quotation modified). And given the different elements of this prong, *Salhotra,* 2024 U.S. Dist. LEXIS 230728 at 24-26, at summary judgment and trial, a fact-finder could find that the practice here is unfair even if it is not deceptive.

Finally, to the extent the SAC suggests the unfairness theory sounds exclusively in fraud, Walterlakes should be given leave to amend to address this minor issue, particularly in light of the fact that FYF failed to timely raise this issue.

### D. Plaintiff Gunzl's New York claims are adequately pled.

Under GBL Sections 349 and 350, a plaintiff must allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Bourbia v. S.C. Johnson & Sons, Inc.,* 375 F. Supp. 454, 465 (S.D.N.Y. Mar. 21, 2019); NY GBL §§ 349, 350. FYF challenges the second two elements of these claims by taking an improperly narrow view of the deceptive practices being challenged here.

#### 1. Plaintiff Gunzl adequately pleads New York consumers are likely to be deceived.

To prevail on a claim arising under GBL §§ 349 and 350, a plaintiff must show that the deceptive practice is "likely to mislead a reasonable consumer acting reasonably under the

circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). While it is possible for a court to decide this question as a matter of law, *see id.*, this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage. *Duran v. Henkel of Am., Inc.,* 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases).

Unlike the more settled questions under California law, courts have not yet considered whether drip-pricing schemes violate GBL 349 and 350. While FYF argues that GBL 349 and 350 categorically prohibit any claim in which fees were disclosed before the point of sale, Mot. at 15, the better reading of these laws, their legislative history, and interpreting case law is to find that is plausible that consumers were misled in a material way.

The New York Court of Appeals has stated that GBL 349 and 350 are broad, and intended to apply "to virtually all economic activity." *Karlin v IVF Am.,* 93 NY2d 282, 290 (1999). In looking to the legislative history, the *Karlin* Court explained that these statutes' broad scope was intentional, as they were to "provide needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State." *Id.* at 290-291 (quotation modified). To that end, the statutes do "not require proof of justifiable reliance." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 26, (1995). And they are intended to protect consumers against deceptive and misleading "practices that do not rise to the level of common-law fraud." *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 345 (1999).

Here, Gunzl's drip-pricing claims comfortably fall within the statutes' ambit. He alleges that he and other consumers are reasonably deceived by the low price and subsequent confusing Purchase Flow. From the text of the statutes and their legislative purposes, there is no reason why the California Court of Appeals decision in *Veera* should not inform the result here. *See La Rosa v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. App. LEXIS 6253, at *4-5 (2d Cir. Mar. 18, 2025) ("Due to the similarities between New York's and California's statutes, consumer protection "claims brought under New York and California law are governed by substantially the same reasonable consumer test.") (quotation modified).

FYF argues however that "it is well-settled that that there can be no GBL §§ 349 and 350 claims 'when the allegedly deceptive practice was fully disclosed.'" Mot. at 15 (quoting *Broder v. MBNA Corp*., 281 A.D.2d 369, 371 (App. Div. 1st Dept. 2001)). There are several problems with this argument. First, it ignores that New York requires that courts "consider the challenged advertisement as a whole, including disclaimers and qualifying language," in considering whether a practice is deceptive. *Mantikas v. Kellogg Co*., 910 F.3d 633, 636 (2d Cir. 2018).[11] As such, FYF's point-of-sale fee reveal must be considered in the broader context of the original advertisement and Purchase Flow as a whole. Unlike a box of cereal, a consumer cannot see the FYF's entire "advertisement" easily; rather, FYF designed the "advertisement" so that consumers do not obtain the "disclosure" until after they have initiated the transaction and complete a lengthy series of tasks and purchasing decisions, all designed to increase their temporal and mental investment in the product while decision-fatigue and other psychological forces weaken their resolve to reject the higher price. SAC ¶¶ 23-33, 84-89. A fact-finder could plausibly find that the point-of-sale fee reveal is not a true good faith disclosure, but the final step in the deceptive scheme.

Second, the quoted language from *Broder* has questionable origins.[12] *Broder* did not involve a point-of-sale fee reveal, and the quote was in dicta. 281 A.D.2d at 371. Thus, *Broder* does not support the categorical prohibition of drip-pricing claims with point-of-sale fee reveals. *Broder*'s stray observation overstated the narrow holding in *Sands v. Ticketmaster-New York*, 207 A.D.2d 687 (App. Div. 1st Dept. 1994). Nor does *Sands* concern a fact pattern in which a point-of-sale fee reveal was alleged to be deceptive. Rather, the court found no deception where the theory was that the fees were "excessive," and because they were fully disclosed, excessiveness,

---

[11] As *Mantikas* notes, California courts consider the same test, and thus, these arguments further support finding that Walterlakes has stated a claim under California law.
[12] FYF also cites *Goshen v. Mut. Life Ins. Co.,* 98 N.Y.2d 314 (2002), which does not contain the holding it attributes to it.

standing alone, did not violate GBL 349 and 350. *Id.* at 687.[13] But the mere fact that excessiveness, standing alone, is not deceptive has no bearing on the question of whether reasonable consumers are misled when an e-commerce company uses artificially low advertised prices, then employes a lengthy and psychologically manipulative Purchase Flow to trick consumers into paying Surprise Fees at the point-of-sale.[14]

Gunzl expects that FYF will pound the table over the dearth of case law permitting GBL 349 and 350 claims where there has been a point-of-sale fee reveal. But *Mantiki*, the text of these statutes, and the legislative history counsel in favor of finding deception plausible here. And neither *Broder* nor any other case cited by FYF supports the idea that e-commerce retailers should have blanket immunity for deceptive schemes, provided they sneak in a disclosure when they know consumers are the least likely to walk away due to how they have set up the transaction.

### 2.     Plaintiff Gunzl alleges a cognizable injury.

FYF did not raise this argument in its pre-motion letter, *see generally* ECF No. 28, and it should be disregarded. Should the Court elect to consider it, it should be rejected.

To obtain damages, GBL 349 requires proof that "a material deceptive act or practice *caused actual, although not necessarily pecuniary, harm.*" *See Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 56 (1999). Courts reject the idea of deception-as-injury, and thus, being induced to purchase a product, standing alone, is insufficient to state a claim. *Id.* But there is no requirement

---

[13] Going back even further reveals the flimsy nature of this holding on which FYF rests. For support, *Sands* cited to a case against a rental car company that was sued for illegally selling gasoline and certain practices relating to insurance and late fees, and in which the court concluded the "practices" at issue there were disclosed and thus were not actionable. *See generally Lewis v. Hertz Corp.,* 181 A.D.2d 493, 494, 581 N.Y.S.2d 305, 307 (App. Div. 1st Dept. 1992). The opinion contains no information from which one could reasonably conclude that the court intended to hold that all cases involving pre-purchase disclosure could never be actionable. And the case *Lewis* cites for the proposition that disclosed practices are not actionable does not contain any such holding. *See generally Demarco v. Bay Ridge Car World, Ltd.,* 169 A.D.2d 808, 809, 565 N.Y.S.2d 176, 177 (App. Div. 2nd Dept. 1991).

[14] FYF cites *Zuckerman v. BMG Direct Mktg.*, 290 A.D.2d 330, 331, (App. Div. 1st Dept. 2002), which, like *Sands*, involves claims that fees were excessive, not that they were revealed in a deceptive way. FYF's other case, *Dimond v. Darden Rests., Inc.,* 2014 U.S. Dist. LEXIS 94004 (S.D.N.Y. July 9, 2014), does not involve drip-pricing but an 18% automatic gratuity disclosed on the menu and visible to consumers before they initiate ordering. *Id.*

consumers allege they received a defective product or did not receive the benefit of the bargain; the injury requirement can be satisfied a variety of ways, including "by alleging that (1) the plaintiff overpaid *or* paid a 'price premium' in that she either received a good worth less than what she paid for *or* paid an inflated price; *or* (2) plaintiff did not receive the product she bargained for." *Rodriguez v. Hanesbrands Inc.,* 2018 U.S. Dist. LEXIS 28002, at *12 (E.D.N.Y. Feb. 20, 2018) (emphasis added). In cases involving deceptive pricing and fees and other overcharges, the injury is the inflated price paid because of the hidden fees. *See Watts v. Jackson Hewitt Tax Serv.*, 579 F. Supp. 2d 334, 349 (E.D.N.Y. 2008) (finding statutory injury adequately pled in hidden fee case, because plaintiffs alleged they were overcharged).

Here, Gunzl alleges that FYF's bait price and Purchase Flow caused him to pay an inflated price for the product. *See* SAC ¶ 136, 215. He pleads that the lengthy, deceptive Purchase Flow caused frustration, and denied him the opportunity to seek out alternatives. *Id.* at 136. And he pleads that because he did not know the "product was going to be substantially more expensive than initially listed," he was injured "in the form of the full purchase price of the products purchased from FYF, a price premium, or at a minimum, any Surprise Fees that were not disclosed until later stages in the Purchase Flow." SAC ¶ 215. This constitutes an injury within the meaning of New York's consumer protection statutes.

FYF argues that neither Gunzl's loss of a purchase price nor the Surprise Fee are sufficient to constitute injury, contending that the deception and injury are the same. But Gunzl's claim is that he was promised one price, and the FYF's psychologically manipulative Purchase Flow resulted in him paying a higher than advertised price. Deception and injury do not collapse on to one another, as he was deceived the initial price; his injury is the final price, or at a minimum, the Surprise Fees added at the end. SAC ¶ 215. *See Dunham v. Sherwin-Williams Co.,* 636 F. Supp. 3d 308, 316 (N.D.N.Y. 2022) (holding that in a deceptive pricing case, allegations of purchasing a product at "an inflated price as a result of the defendant's deception is a sustainable injury under Section 349."); *Ebin v. Kangadis Food Inc.,* 2013 U.S. Dist. LEXIS 174174, at *12 (S.D.N.Y. Dec. 9, 2013) ("The deception is the false and misleading label, and the injury is the purchase price.").

To that end, this case is distinguishable from "fake discount" cases such as *Binder v. MichaelKors (USA), Inc.,* 2024 U.S. Dist. LEXIS 115818 (S.D.N.Y. June 28, 2024), in which the court found no injury under GBL 349. In that case, the consumers alleged that an outlet store's practice of inflating the original price of the product to show a larger discount induced them to buy the product. *Id.* *10-11. There, no injury was found because the misrepresented "attribute" was the fake discount, which affected neither the amount the consumer paid nor what the consumer received. *Id.* On the other hand, courts correctly find statutory injury where the misrepresented attribute impacts *either* what the plaintiff pays or what the plaintiff receives. *See Belcastro v. Burberry Ltd.,* 2017 U.S. Dist. LEXIS 26296, at *14 (S.D.N.Y. Feb. 23, 2017) ("*Small* requires some connection between the deception and the price actually paid by the plaintiff *or* the intrinsic value of the good.") (emphasis added). In cases such as *Ebin*, the misrepresented attribute resulted in the plaintiff receiving an inferior product at the advertised price; here, the misrepresented attribute of the advertised price at the start of the Purchase Flow resulted in Gunzl receiving the same product at higher-than-advertised price.

Nevertheless, FYF further contends that Gunzl cannot show a price premium injury, because he does not assert any misrepresentation that caused him to pay a premium. Mot. at 21-22. But Gunzl alleges that FYF misrepresented the price of the product at the beginning of the transaction, and by omitting information about additional fees, he was led to believe the price was inclusive of all fees and inducing him to purchase the product. SAC ¶¶ 135-36. Gunzl is not required to plead that the product was inferior or defective, as his claims do not concern a product's design, manufacturing processes, ingredients, or effectiveness, but rather the product's price.

Finally, contrary to FYF's assertion, Gunzl did not receive the benefit of the bargain, because he did not receive the advertised price for the product, which FYF led him to believe was inclusive of all delivery costs and fees. SAC ¶¶ 126-136. Gunzl alleges the Surpise Fee is not actually a fee for delivery, because it is not tied to actual delivery costs. SAC ¶ 82. As evidence that the "delivery fee" is an inflated charge added on to extract additional sums from consumers it

can trick, he pleads FYF often emails an offer to waive the Surprise Fee if consumers walk away from the purchase, a fact he did not know when he made the purchase. SAC ¶ 78, 82, 136.

### E. FYF'S voluntary payment affirmative defense is inapplicable to statutory claims.

FYF moves to dismiss Plaintiffs' statutory claims on the grounds that they are barred by the common law voluntary payment doctrine. But this argument fails because California and New York preserve the common law only to the extent it is not inconsistent with statutory law. *See* Cal. Civ. Code § 22.2 (common law is the rule of decision as long as it is not inconsistent with State law); N.Y. Const. art I 14 (common law shall continue "subject to such alterations as the legislature shall make"). And here, the voluntary payment doctrine undermines the broad remedial purposes of California's UCL, FAL, and CLRA, and New York's GBL 349 and 350.

The voluntary payment doctrine bars recovery of money voluntarily paid with full knowledge of the facts. Mot. at 17. Under FYF's theory that the doctrine bars liability due to Plaintiffs' payment after the point-of-sale fee reveal, it is inconsistent with the protections afforded to consumers under the statutes at issue here. Permitting the doctrine to apply here would transform the reasonable consumer standard and impose a heightened reliance requirement, rendering the statutes useless to protect consumers unless their facts satisfy the common law fraud standard. As discussed in section IV.D.1, herein, the New York legislature intended for broad coverage. And so too did California's. *See, e.g., Veera,* 6 Cal. App. 5th at 919–22 (discussing the importance of interpreting the UCL, CLRA, and FAL to protect consumers); *Cel-Tech Comm., Inc. v. Los Angeles Cullar Tel. Co.* 20 Cal. 4th 163, 180 (1999) (citing to the legislative history of the UCL to describe its coverage as "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law").

Many courts are in accord. *See, e.g., Bautista v. Valero Mktg. & Supply Co.*, 2018 U.S. Dist. LEXIS 221854 at *9-10 (N.D. Cal. 2018); *MacDonell v. PHH Mortg. Corp.*, 45 A.D.3d 537, 539 (2007). While FYF cites some cases applying the doctrine to the cases at issue, those cases do not consider either California Civil Code§ 22.2 and Article I 14 of the New York Constitution.

Moreover, voluntary payment is an affirmative defense, and for that reason, courts are reluctant to dismiss claims based on it at the motion to dismiss stage. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 73-74 (2d Cir. 2009); *Morgulis v. Bus Patrol Am. LLC*, 2024 U.S. Dist. LEXIS 136982, at *11-12 (S.D.N.Y. 2024); *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 106 (S.D.N.Y. 2022). At minimum, a factual dispute exists as to whether the application of this affirmative defense is in conflict with the state laws at issue here. And where pleadings fail to establish whether plaintiffs knew or should have known that fees were misleading, dismissal under voluntary payment doctrine is premature. *See Vasell,* 2025 U.S. Dist. LEXIS 9481 at *34-36.

Here, as in *Vasell*, Plaintiffs satisfy this standard by alleging lack of full disclosure. FYF's Surprise Fees were not disclosed at the beginning of the purchase process, nor conspicuously disclosed on the final checkout page. *See* SAC ¶ 79. Moreover, Plaintiffs allege that when customers view the $14.99 fee and abandon their shopping cart, FYF sends an email offering to waive the Surprise Fee. SAC ¶¶ 4, 78, 123, 136. During the process, Plaintiffs had no knowledge of this material fact and did not know the fees were waivable upon cart abandonment, that the fee was negotiable rather than mandatory, or that FYF charged uninformed customers $14.99. SAC ¶¶ 72-73, 75, 117, 122-123, 130-135. FYF's concealment of pricing practice constitutes a "lack of full disclosure" that defeats the voluntary payment doctrine. *Spagnola*, 574 F.3d at 73.

### F.    It is premature to dismiss Plaintiffs' claims for equitable remedies.

FYF seeks to dismiss Plaintiffs' claims for equitable restitution under the CLRA, FAL, and UCL and NYGBL arguing that Plaintiffs have failed to plead inadequate remedies at law. Mot at 16. Gunzl does not assert claims for restitution under New York Law. See SAC ¶¶ 216, 225. As to Walterlakes' California Claims, FYF oversimplifies the legal standard, as each statute at issue has different requirements and purposes.[15] The Court should reject its arguments outright, as discovery and expert testimony is required to determine if there is an adequate remedy at law.

---

[15] Plaintiffs concede that under *Guzman v. Polaris Indus.,* 49 F.4th 1308, 1312 (9th Cir. 2022), the UCL unlawful claim here, which is predicated on the CLRA claim for damages, presents unique concerns regarding equitable jurisdiction, but those concerns are not implicated to the extent the UCL unlawful prong is predicated on violations with equitable remedies.

First, Plaintiffs have not had the benefit of seeing FYF's answer and affirmative defenses. A jury could decide that the voluntary payment doctrine barred the CLRA claims or contributory negligence reduced them, but when sitting at equity, a court might decide these defenses carry no weight. Plaintiffs cannot be expected to plead all the ways in which unknown affirmative defenses might reduce or bar their legal damages.

Second, courts often defer this question to a later date in the litigation, in light of the need for discovery and expert testimony to prove the amount of monetary relief required. *See, e.g., French v. Banana Republic LLC,* 2024 U.S. Dist. LEXIS 200279, at *5 (N.D. Cal. Nov. 4, 2024) ("CLRA damages may be calculated under a benefit-of-the-bargain methodology while UCL/FAL restitution may be calculated under a price premium or full refund theory, which could yield different results."). And the fact that this case involves deceptive pricing distinguishes it from this Court's opinion in *In re Nurture Baby Food Litig.*, 2025 U.S. Dist. LEXIS 56512 (S.D.N.Y. Mar. 26, 2025), where the court dismissed the equitable claims in a product labeling case because there was no explanation of how the "restitution they seek differs from the damages they seek under other statutes or legal theories." *Id.* at *64. In product labeling cases, however, damages and restitution nearly always use a price premium damages model, but in this instance, recovery could be in the form of price premiums, full or partial refund of fees, or the full purchase. Likewise, affirmative defenses going to damages, such as offsets, may also change the equation. FYF may argue that its out of pocket costs (either in full or for postage and handling only) be deducted from recovery. It is possible that a jury could accept such an affirmative defense, diminishing recovery at law, while a court sitting at equity decides differently.

Third, the many claims here each have different elements, and there is always a chance that FYF may prevail on one or more of the claims at law. Consider the differences between the violation of section 1770(29) of the CLRA and the UCL unfairness prong. The former contains a safe harbor for situations when the "[p]ostage or carriage charges that will be reasonably and actually incurred to ship the physical good to the consumer." *Id.* § 1770 (29)(A)(ii). Were FYF to successfully invoke that element, the CLRA would not provide a remedy at law, but Plaintiff

Walterlakes may still prevail on the different UCL unfairness prong here. *See, e.g.*, *Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1065 (C.D. Cal. 2021) (finding it plausible that remedies at law may not be available under the CLRA due to "more stringent elements that plaintiff may ultimately not be able to prove.") (quotation modified).

Finally, deferring the question of whether there is an adequate remedy at law also promotes judicial economy. When federal courts decline to exercise equitable jurisdiction, they must do so without prejudice to refiling in state court. *Guzman v. Polaris Indus.*, 49 F.4th 1308, 1314 (9th Cir. 2022). And at least with respect to claims under the UCL and FAL, California courts are not bound by the same jurisdictional limitation. *See id.*; *see Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 843 (9th Cir. 2020). By deferring the question of whether there is an adequate remedy at law until summary judgment, discovery on these overlapping claims can be conducted in one forum.

### G.     Plaintiffs' claims on behalf of the Multi-State Class are adequately pled.

FYF moves to dismiss the Multi-State Claims, but its arguments should be rejected.

First, FYF contends that it is inadequately pled, as Plaintiffs list each statute alleged to be part of the class without further detail. In its pre-motion letter, ECF No. 28, FYF cited just one case, *Emilee Carpenter, LLC v. James*, 107 F.4th 92 (2d Cir. 2024), which has no relevance to any issues in this case, much less to this argument. FYF's prior counsel's mistake (and suspected use of artificial intelligence) should be grounds for this Court to disregard this argument.

In any event, the argument should be rejected as it is nothing more than a way to argue around the Second Circuit's clear holding that "as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)." *Langan v. Johnson & Johnson Consumer Cos.,* 897 F.3d 88, 93 (2d Cir. 2018).  FYF is on notice as to the nature of the claims against it, by virtue of the allegations under Count II-VI, where Plaintiffs allege how FYF violated those statutes.  FYF does not argue that any of those causes of action violate Rule 9(b) or are otherwise unclear or fail to put it on notice. And Plaintiffs' claims under the other statutes mirror their own.

Next, FYF argues that is implausible that Plaintiffs will be able to certify a nationwide class, but both cases it cites acknowledge that dismissal at this stage is "disfavored." *See Jung v. Gina Grp., LLC*, 2020 U.S. Dist. LEXIS 118048, at *11 (S.D.N.Y. July 6, 2020); *Borgese v. Baby Brezza Enters. LLC*, 2021 U.S. Dist. LEXIS 30216, at *8 (S.D.N.Y. Feb. 18, 2021). As one court explained, the reason for this is because doing so "require[s] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *In re Bookends & Beginnings LLC*, 2022 U.S. Dist. LEXIS 161695, at *3-4 (S.D.N.Y. Sep. 7, 2022) (internal quotations and citations omitted).

In any event, certification of a multi-state class in this case especially straightforward, and FYF's fearmongering about the differences in state laws are either overstated or can be readily managed. As FYF is an e-commerce company, it is plausible that they will have class member information and records of purchases, and any differences in statutes of limitations can be readily managed through simple queries of its records.

As for the claims, the plaintiffs from New York and California bring claims that are representative of the broader universe of consumer protection laws. For example, New York's Gen. Bus. Law § 349 adopts the interpretations of the FTC for purposes of determining what is deceptive. *See State by Lefkowitz v. Colo. State Christian Coll. of Church of Inner Power, Inc.*, 346 N.Y.S.2d 482, 487 (Sup. Ct. 1973). Many other states' consumer protection laws are in accord. *See, e.g.*, *Sava v. 21st Cent. Spirits, LLC*, 2024 WL 3161625, at *9 (N.D. Ill. June 25, 2024) (explaining FDUTPA and ICFA are "Little FTC Acts," patterned on Section 5 of the FTC ACT, that largely "provide private rights of action" with respect to practices prohibited by Section 5).

Similarly, California's CLRA prohibits "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), a prohibition that not only is consistent with the FTC's regulations, but appears in many other states' consumer protection laws. *See, e.g.,* Nev. Rev. Stat. § 598.0915(9) ("Advertis[ing] goods or services with intent not to sell or lease them as

advertised."); 815 ILCS 510/2(a)(9) (Illinois, same). Thus, because of the similarities in state substantive laws, common issues will predominate as to liability.

FYF also claims that differences in state laws with respect to the enforcement of the purported arbitration agreement and class waiver here make it implausible for a class to be certified. Mot. at 24. But the arbitration agreement calls for the application of New York law, ECF No. 39-1 at 8, so FYF overstates the complications here. And FYF has not moved to compel arbitration here, nor is there any evidence as to how class members even became bound to it.

In any event, all class members will have a common defense to its enforcement. The Second Circuit recently undertook a textualist analysis of section 2 of the Federal Arbitration Act, observing that its scope is limited. *See Davitashvili v. Grubhub Inc.,* 131 F.4th 109, 119 (2d Cir. 2025). Specifically, 9 U.S.C. § 2 is applies only to "controversies thereafter arising out of such contract or transaction…", a fact that the Second Circuit found to limit a federal court's ability to enforce any arbitration agreement where the controversy in question was not caused by the parties' contractual relationship. *Id.* The claims in this case were not caused by any contract, and Plaintiffs expect that an attempt to enforce it would be rejected just as it was in *Davitashvili. Id.* at 120.[16]

## V.    CONCLUSION

For these reasons, this Court should deny FYF's motion in full. Alternatively, Plaintiff respectfully requests leave to amend the Complaint, particularly as to the arguments FYF raised that were not properly presented to the Court in the pre-letter motion.

DATED: October 3, 2025                **CLARKSON LAW FIRM, P.C.**

                                                     */s/ Kristen Simplicio*
                                                     Kristen Simplicio (*pro hac vice*)
                                                     *ksimplicio@clarksonlawfirm.com*
                                                     Roke Iko (*pro hac vice* forthcoming)
                                                     *riko@clarksonlawfirm.com*

---

[16] Nor is any purported delegation clause relevant because the Court must decide whether an arbitration agreement is covered by section 2 of the FAA. *See New Prime Inc. v. Oliveira*, 586 U.S. 105, 111, 139 S. Ct. 532, 537 (2019) ("After all, to invoke its statutory powers under §§3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§1 and 2.").

1050 Connecticut Ave NW, Ste 500
Washington, DC 20036
Tel.: (202) 688-2105
Fax: (213) 788-4070

Ryan J. Clarkson (NY Bar No. 5786967)
*rclarkson@clarksonlawfirm.com*
Cody Laux (*pro hac vice*)
*claux@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*