UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/26

TREVOR WALTERLAKES and ANTHONY GUNZL, *Individually and on Behalf of all Others Similarly Situated*,

Plaintiffs,

-against-

FROM YOU FLOWERS, LLC,

Defendant.

1:25-cv-867 (MKV)

OPINION AND ORDER GRANTING MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiffs bring this putative class action, alleging violations of the consumer protection statutes of every state in the country, among other claims, complaining that Defendant discloses the full price of delivering flowers and gifts on its website at "the last possible point in the check-out process" [ECF No. 32 (the "Second Amended Complaint" or "SAC") ¶ 22]. Specifically, Plaintiffs allege that Defendant advertised "low" initial prices for a floral arrangement and gift basket, respectively. SAC ¶ 3. Next, in a process they unironically describe as "labor-intensive," Plaintiffs made "numerous decisions," such as whether to add balloons, include a custom note, or ensure faster delivery. *Id.* ¶¶ 3, 124. Thereafter, Defendant disclosed what Plaintiffs call the "Surprise Fees," which Defendant "labeled as 'delivery fees.'" *Id.* ¶ 2. Plaintiffs "gave in" and paid the so-called Surprise Fee. *Id.* ¶¶ 123, 136. Put another way, Plaintiffs chose to purchase items from Defendant with complete information about the full prices of their purchases. *See id.*

Defendant moves to dismiss this case for lack of standing and failure to state a claim [ECF Nos. 37, 38, 39]. For the reasons set forth below, the motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

Plaintiffs' 74-page pleading is largely devoted to describing an allegedly common "tactic employed by e-commerce corporations to psychologically manipulate consumers." SAC ¶ 18. Plaintiffs describe a "routine" general practice—that Plaintiffs variously refer to as "bait-and-switch" pricing, "drip pricing," and "partitioned pricing"—in which a seller lists an item at "an attractively low[] 'bait' price" or "base price," and, only after the potential customer has "directed significant time and attention to completing the transaction," the seller discloses an additional fee. SAC ¶¶ 17–22, 90. Plaintiffs contend that, according to "[t]railblazing psychologists," customers are "likely to succumb," and choose to pay the later-disclosed fee, rather than "restart[] their search for a suitable good in the online marketplace." *Id.* ¶¶ 28, 29.

Plaintiffs' specific factual allegations, on the other hand, are simple. Defendant From You Flowers, LLC ("FYF") is a large "e-commerce platform" that sells floral arrangements and gifts for delivery. SAC ¶ 2; *see id.* ¶¶ 37, 38. Plaintiff Trevor Walterlakes is a resident of Los Angeles, California who purchased "Defendant's Beary Happy Birthday Snack Basket" for his friend. *Id.* ¶¶ 12, 114, 123. Plaintiff Anthony Gunzl is a resident of Mount Vernon, New York who purchased from Defendant a "floral arrangement to deliver to a friend to demonstrate his condolences for the friend's loss of a relative." *Id.* ¶¶ 13, 127, 136.

In August 2024, Walterlakes "searched for a gift basket." SAC ¶ 114. While "scanning through" the "offerings" on "Defendant's website, he identified" the Beary Happy Birthday Snack Basket, which "was listed at the price of $64.99." *Id.* He "clicked on the item" and "selected the 'Regular' size." *Id.* ¶ 115. He thereafter "entered his friend's zip code," selected a delivery date

[1] The facts are taken from the Second Amended Complaint [ECF No. 32 ("SAC")], and, for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

in November 2024, and "opted to include a card" with a custom message. *Id.* ¶ 116. He "clicked 'Add to Cart'" and "was shown a subtotal for his order" that did not include a delivery fee. *Id.* ¶ 117. He next "clicked 'Continue to Secure Checkout,'" at which point he chose "Continue as Guest," in contrast with logging in to an existing account or creating an account. *Id.* ¶ 118. After entering his payment details, he "was taken to the 'Review Order' page," which reflected a "Surprise Fee of $14.99." *Id.* ¶ 122. He chose to complete the transaction. *See id.* ¶ 123.

The allegations with respect to Gunzl's purchase are similar. He "searched for a floral arrangement" and "identified" a bouquet "listed at the price of $49.99." SAC ¶ 127. He proceeded through the purchase process and, among other choices, "selected a same-day delivery date" for "an added charge of $2.99." *Id.* ¶ 129. On "the 'Review Order' page," he was "presented with the Surprise Fee of $14.99." *Id.* ¶ 135. He chose to pay. *See id.* ¶ 136.

As Plaintiffs' own pleading makes clear, the so-called "Surprise Fee of $14.99 per product [is] ostensibly for 'delivery.'" SAC ¶ 77. Indeed, Plaintiffs include screenshots of the purchase process, and the screenshot of the Review Order page reflects a "Delivery Fee" of "$14.99." SAC, Ex. A, Fig. 7. Plaintiffs also acknowledge that "Defendant has a page on 'Taxes and Pricing,' linked at the "bottom of the home page" of its website, which expressly "states [that] 'From You Flowers, LLC has a Service Fee for all orders.'" SAC ¶ 80. Plaintiffs further acknowledge that this service fee "appears to" mean the "delivery fee" disclosed at "the final stage" of the purchase process. *Id.* As Plaintiffs acknowledge, on the "Frequently Asked Questions page," Defendant explains: "Our service fee guarantees . . . that your delivery will be made by one of our local preferred florists in your recipient's area." *Id.* ¶ 81.

Plaintiffs contend, however, that the so-called Surprise Fee is not a delivery fee. *See* SAC ¶ 82. According to Plaintiffs, a delivery fee must be "a pass-through shipping cost," reflecting a seller's use of "a third-party shipper." *Id.* Plaintiffs contend that Defendant should not "partition[]

the consumer's cost into two parts" because "Defendant's products are typically prepared and hand-delivered by [the same florists], who are paid both for preparing the floral arrangement[s] and for delivering them." *Id.* Plaintiffs also contend that the so-called Surprise Fee is not a delivery fee because it is "based on the specific arrangement chosen . . . , regardless of where the arrangement is being delivered." *Id.* Plaintiffs further allege that if potential customers "abandon their cart," Defendant may email them "additional promotions," including, "[i]n some instances," an offer "to waive the Surprise Fee if they complete their order." *Id.* ¶¶ 4, 78.

**B. Procedural History**

Plaintiffs initiated this case by filing a complaint in January 2025 [ECF No. 1 (the "Original Complaint")]. The parties jointly requested and received an extension of time for Defendant, which was then represented by prior counsel, to respond to the Original Complaint [ECF Nos. 9, 11]. Thereafter, the parties jointly proposed an extended schedule for Plaintiffs to amend their pleading and Defendant to file a motion to dismiss [ECF No. 19]. The Court granted another extension of time, but admonished the parties to proceed in accordance with the Court's Individual Rules of Practice in Civil Cases, which require a party seeking to file a motion to dismiss first to file a pre-motion letter summarizing the grounds for dismissal [ECF No. 20].

Plaintiffs thereafter filed the First Amended Complaint and voluntarily dismissed their claims against an individual who had been named in the Original Complaint [ECF Nos. 21, 22]. Defendant retained new counsel [ECF Nos. 23, 24], and Defendant thereafter filed a pre-motion letter seeking leave to move to dismiss [ECF No. 28 ("Def. PML")].

Defendant argued in its pre-motion letter that this case should be dismissed for lack of standing because Plaintiffs fail to allege a cognizable injury-in-fact. *See* Def. PML at 2. Defendant also argued that Plaintiffs fail to state a claim because, among other reasons, a reasonable consumer would not be misled by a disclosed fee. *See id.* Defendant further argued that all "claims for

equitable relief should all be dismissed," citing case law. *Id* at 3. Plaintiffs filed a pre-motion letter in opposition [ECF No. 29]. The Court issued a Scheduling Order giving Plaintiffs one "**last opportunity to amend**" their pleading to cure "**any issue raised in the parties' pre-motion letters**" and setting a briefing schedule [ECF No. 30 (emphases in original)].

Plaintiff filed the Second Amended Complaint [ECF No. 32 (the "Second Amended Complaint" or "SAC")]. In the Second Amended Complaint, Plaintiffs purport to invoke the Court's jurisdiction "pursuant the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)" ("CAFA") on the grounds that "the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists." SAC ¶ 15. The Second Amended Complaint first purports to assert a claim on behalf of Plaintiffs and a putative nationwide class for "Violations of the Consumer Protection Acts of 50 States" ("Count I"). *Id.* ¶¶ 153, 154 (listing statutes), 155–64.

The Second Amended Complaint next asserts a claim on behalf of Walterlakes and a putative California subclass for violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq.* ("Count II"). *Id.* ¶¶ 165–77. It also asserts a claim on behalf of Walterlakes and the putative California subclass for violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* ("Count III"). *Id.* ¶¶ 178–81. In addition, on behalf of Walterlakes and the putative California subclass, the Second Amended Complaint asserts claims for violations of the "'Unfair' Prong," "'Fraudulent' Prong," and "'Unlawful' Prong" of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("Count IV"). *Id.* ¶¶ 182–207. Next, on behalf Gunzl and a putative New York Subclass, the Second Amended Complaint asserts a claim for violation of the New York Deceptive and Unfair Trade Practices Act, N.Y. G.B.L. § 349, which bans deceptive acts or practices ("Count V"). *Id.* ¶¶ 208–16. Finally, on behalf Gunzl and the putative New York

Subclass, it asserts a claim for violation of the "False Advertising" prohibition of the New York Deceptive and Unfair Trade Practices Act, N.Y. G.B.L. § 350 ("Count VI"). *Id.* ¶¶ 217–25.

For relief, Plaintiffs seek declaratory relief and a broad injunction: "requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; [and] requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct." SAC at 60. Plaintiffs also request damages, restitution, disgorgement, attorneys' fees and costs, and interest. *Id.*

After Plaintiffs filed the Second Amended Complaint but before Defendant filed its motion to dismiss, the parties jointly requested to stay the case pending mediation [ECF No. 34]. The Court stayed all deadlines and directed the parties to file a status update after the mediation [ECF No. 35]. The parties reportedly were unable to reach a settlement [ECF No. 36].

Thereafter, Defendant filed its motion to dismiss, consisting of a memorandum of law and a declaration of counsel attaching Defendant's Terms of Service, which provide that customers submit to individual arbitration and cannot seek relief on a class-wide basis [ECF Nos. 37, 38 ("Mem."), 39 ("Forrest Decl."), 39-1 ("Terms of Service")]. Plaintiffs filed a memorandum of law in opposition to the motion to dismiss [ECF No. 40 ("Opp.")]. Defendant filed a reply brief in further support of its motion [ECF No. 43 ("Reply")].

The Court later heard oral argument on the motion to dismiss [ECF No. 54 ("Transcript of Oral Argument" or "Tr.")]. At the oral argument, the Court raised a threshold concern that Plaintiffs had failed to properly allege minimal diversity for purposes of the Court's jurisdiction under CAFA and directed Plaintiff to file an affidavit "addressing that issue." Tr. at 13:19–20. In its allotted time, Defendant maintained that Plaintiffs failed to allege an injury for purposes of

Article III standing, *see id.* at 5:10–6:19, and stressed that, under New York and California law, that "the absence of a delivery fee on the first page of the website" would not mislead "a substantial group of consumers into thinking that there would not be a fee, a delivery fee[,] at some point" in "the context here of live flowers intended for the delivery to a specific person," *id*. at 4:8–16. Defendant argued that Plaintiffs' claim for violation of every State's consumer protection statute (Count I) is "obviously improperly pled," since it merely lists statutes without "stat[ing] the elements of the statutes" or enabling Defendant and the Court "to understand whether or not the plaintiffs' allegations can meet those elements." *Id.* at 8:23, 9:23–25. Defendant also argued that Plaintiffs cannot seek injunctive relief, which would require a future risk of their being misled, again, by an initial omission into believing that Defendant does not charge a delivery fee. *See id.* at 6:5–18.

During their oral argument, Plaintiffs represented that their injury for purposes of Article III standing is "lost money," "whether it's the $15 surprise fee, or that they wouldn't have bought the product at all if they had known the true price of it." Tr. at 15:13–18. The Court pressed Plaintiffs, point out that, by their own allegations, Plaintiffs did know the full price, including the so-called Surprise Fee, before they placed their orders, and Plaintiffs' counsel agreed. *See id.* at 15:19–21. The Court then asked: "So how can they say wouldn't have ordered if they had known when they submit that they did know." *Id.* at 15:22–23. Counsel responded that Plaintiffs "relied on the initial low advertised price" before they "went through a long purchase process that [Plaintiffs] allege was intentionally designed to exhaust them." *Id.* at 15:25–16:4. The Court then asked: "So is the injury going through the long process?" *Id.* at 16:24–25. Counsel, again, represented that Plaintiffs' Article III injury is "lost money," either "the $14.99 in fees, or . . . the entire purchase price." *Id.* at 17:2–6. When pressed ("Which is it"), Plaintiff's counsel stated that

"it is the full purchase price" because "they would have not initiated the process had they . . . known that at the end of it, it would . . . cost them $15 more." *Id.* at 17:7–13.

The Court later asked Plaintiffs about the risk of future harm for purposes of injunctive relief. *See* Tr. at 21:11–12 ("Where's the future harm? Next time they go to the website they know."). Plaintiffs' counsel first speculated that Plaintiffs might go back to Defendant's website willing to "be charged $15" in fees, go through the purchase process, and "then at the end, it's: Oh no. Today, this surprise fee is $30, not $15." *Id.* at 21:13–22:4. When the Court asked about the basis for that speculation, Plaintiffs' counsel confirmed that she was seeking an injunction on the basis that Defendant "hypothetically" might change the fee. *Id.* at 21:22–22:8. Plaintiffs' counsel thereafter speculated that Defendant "could replicate its website, maybe create a new brand," such that Plaintiffs would not "know that it's run by From You[] Flowers" and, therefore, could "get[] hit with the high fees at the end" again. *Id.* at 21:19–20.

After the oral argument, Plaintiffs' counsel filed a declaration regarding minimal diversity for purposes of CAFA jurisdiction [ECF 52 ("Simplicio Decl.")]. Defendant also filed an amended corporate disclosure statement [ECF No. 53 ("Amended Rule 7.1")].

## II. LEGAL STANDARDS

### A. Jurisdiction

#### 1. CAFA

"It is beyond dispute that a party seeking to invoke the jurisdiction of a federal court bears the burden of establishing it." *Jok v. City of Burlington, Vermont*, 96 F.4th 291, 293 (2d Cir. 2024). The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C.

§§ 1332(d)(2) and (d)(5)(B)); *see Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) (CAFA requires only "100 members of the plaintiff class, minimal diversity, and $5 million in controversy"). Minimal diversity is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant." *Id*. at 59–59.

**2. Standing**

To establish Article III standing, plaintiffs must show: "(1) they suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) there is a 'causal connection between the injury and the conduct complained of'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 118 (2d Cir. 2025) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). The "bare" alleged "violation" is not enough. *Id.*

**B. Pleading**

**1. Rule 8**

Under Rule 8 of the Federal Rules of Civil Procedure, a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**2. Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The

allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Moreover, courts do not credit "conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188–89 (2d Cir. 2020) (ellipsis omitted) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).

Where claims sound in fraud, as with each of Plaintiffs' claims under California law (Counts II, III, and IV), they are subject to the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004) ("Rule 9(b) applies when the claim sounds in fraud"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to CLRA and UCL claims); *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (Rule 9(b) applies to FAL claims). Under Rule 9(b), a plaintiff asserting a claim that sounds in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this standard, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

## III. DISCUSSION

Plaintiffs' lawsuit is fatally flawed in several ways, as the Court explains in more detail below. As a threshold matter, notwithstanding that the Court brought this problem to Plaintiffs' attention, Plaintiffs still have not properly alleged minimal diversity as required to establish the Court's subject matter jurisdiction under CAFA. Moreover, Plaintiffs have not plausibly alleged any cognizable injury-in-fact. There is simply no authority for the proposition that choosing to pay fully disclosed prices, in exchange for goods and services that are delivered as expected, may constitute an Article III injury.

In the alternative, if Plaintiffs' alleged "lost money" (which, of course, was not "lost" but voluntarily paid) constitutes their alleged injury, Plaintiffs fail to state a claim. Count I, which purports to assert a claim for violation of every State's consumer protect statute, violates Rule 8. As to their claims under California and New York law (Counts II through VI), Plaintiffs fail to plausibly allege that a reasonable consumer would be misled by an initial listing of an item's price followed by a later disclosure of an additional fee. Plaintiffs similarly fail to plausibly allege reliance on a misleading statement or omission, as required for his California claims. Under New York law, moreover, the voluntary payment doctrine bars recovery of payments voluntarily made with full knowledge of the relevant facts.

To be clear, the Court need not, and does not, reject as implausible Plaintiffs' allegations that they were surprised when Defendant disclosed a delivery fee, at the last step of the purchase process, to deliver Plaintiffs' purchases. The Court accepts Plaintiffs' allegations, farcical though they may seem, that Plaintiffs felt *exhausted* by the process (which they could have, at any time, declined to complete) of selecting the size of their items, deciding, for example, whether to add a teddy bear, and providing the information needed for Defendant to make their deliveries and take payment. The Court is not, however, required to accept Plaintiffs' conclusion that Defendant's purchase process is deceptive notwithstanding Plaintiffs' own allegations that the price of their transactions was fully disclosed before Plaintiffs decided to pay.

There are further problems with this lawsuit, which the Court does not discuss in great detail below because there are other grounds for dismissal. As suggested above, Plaintiffs clearly cannot obtain an injunction based on pure speculation about new conduct in which Defendant *hypothetically* might engage sometime in the future. In addition, Defendant's Terms of Service plainly require arbitration and foreclose class relief.

### A. Plaintiffs Failed To Establish Subject Matter Jurisdiction.

#### 1. Plaintiffs Failed To Properly Establish Minimal Diversity.

While this issue was not raised by the parties, the Court has an "independent obligation" to inquire into the existence of subject matter jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Plaintiffs, who assert only state law claims, have the burden to establish that CAFA provides for federal court jurisdiction over this case. *See Jok*, 96 F.4th at 293. That burden is not high. *See Blockbuster*, 472 F.3d at 57 (CAFA requires only "100 members of the plaintiff class, minimal diversity, and $5 million in controversy"). Yet Plaintiffs have failed to meet their burden because they have failed to properly allege minimal diversity.

Plaintiff may satisfy the minimal diversity requirement by establishing that "any member" of the putative class of plaintiffs "is a citizen of a State different from any defendant." *Blockbuster*, 472 F.3d at 59–59. This requirement would seem to pose little barrier where plaintiffs purport to represent a nationwide class. However, to establish that a plaintiff "is a citizen of a State different from any defendant" still requires alleging the citizenship of at least one plaintiff and at least one defendant. *Id.* Here, Plaintiffs have not properly alleged Defendant's citizenship.

In particular, Defendant From You Flowers, LLC "is a limited liability company." SAC ¶ 14. In the Second Amended Complaint, Plaintiffs allege that Defendant is "incorporated in Connecticut" and "maintains a principal place of business" in New York. *Id.* These alleged facts would be relevant if Defendant were a corporation, which takes the citizenships of the state in which it is incorporated and the state of its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002). However, as alleged by Plaintiffs, Defendant here is an LLC.

A limited liability company, which is not "incorporated" anywhere, ordinarily "takes the citizenship of each of its members." *Bayerische Landesbank, New York Branch v. Aladdin Cap.*

*Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *see Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016). "Under CAFA, however, an 'unincorporated association' is 'deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.'" *Carter*, 822 F.3d at 60 (2d Cir. 2016) (quoting 28 U.S.C. § 1332(d)(10)). The Second Circuit has declined to decide whether the term "unincorporated association," which is not defined in the statute, "encompasses limited liability companies." *Id.* Indeed, in *Carter v. HealthPort Technologies, LLC*, the Court of Appeals remanded for the district court to determine whether minimal diversity existed without providing any guidance as to which approach the district court should use to determine the LLC defendant's citizenship. Rather, the Second Circuit opined that the defendant's citizenship had not been properly pled under "the usual rule," since the complaint "contain[ed] no allegation as to the identity or citizenship of [the defendant's] members." *Id.* In addition, "[i]f" the LLC should be treated as an unincorporated association, the defendant's citizenship still was not properly pled "because the [c]omplaint contain[ed] no allegation as to the State under whose laws [the defendant was] organized." *Id.*

With this in mind, at the oral argument, the Court directed Plaintiffs to file an affidavit properly establishing the existence of subject matter jurisdiction under CAFA. Tr. at 13:19–20. Plaintiffs' counsel filed a declaration regarding minimal diversity [ECF 52 ("Simplicio Decl.")], but it was not entirely satisfactory. In particular, in her declaration, Plaintiffs' counsel repeats the inaccurate assertion that Defendant, an LLC, "is *incorporated* in Connecticut." Simplicio Decl. ¶ 3 (emphasis added). The Court supposes that Plaintiff means to assert that Defendant is an LLC organized under the laws of Connecticut; however, that particular representation simply does not appear anywhere in Plaintiffs' pleading or in the declaration that the Court specifically instructed Plaintiffs to file to properly establish subject matter jurisdiction.

While asserting that Defendant "is incorporated in Connecticut," Plaintiffs' counsel urges

the Court to conclude that an LLC is an unincorporated association under CAFA. Simplicio Decl. ¶ 3; *see id.* ¶ 6. As noted above, under CAFA, an unincorporated association is "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." *Carter*, 822 F.3d at 60 (quoting 28 U.S.C. § 1332(d)(10)). Applying that rule, minimal diversity would exist because Defendant would be a citizen of New York and Connecticut only, and Walterlakes is a citizen of California. *See* Simplicio Decl. ¶ 6; SAC ¶¶ 12, 14; *Blockbuster*, 472 F.3d at 59–59 (minimal diversity exists if any plaintiff "is a citizen of a State different from any defendant"). As such, since the Court does not doubt that Plaintiffs purport to represent a class of at least 100 members and seek $5 million, subject matter jurisdiction would exist in this case. *See Blockbuster*, 472 F.3d at 57.

In this Court's view, an LLC logically should be treated as an unincorporated association under CAFA. *See Claridge v. N. American Power & Gas, LLC*, No. 15-cv-1261 (PKC), 2015 WL 5155934, at *2 (S.D.N.Y. Sept. 2, 2015) (concluding that an LLC is an unincorporated association under CAFA, citing decision by other courts of appeals); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 705 (4th Cir. 2010) (concluding "the term 'unincorporated association' in § 1332(d)(10) refers to all non-corporate business entities"); *see also Windward Bora LLC v. Browne*, 110 F.4th 120, 127 (2d Cir. 2024) (ruling that "an LLC is treated as an unincorporated association" under a different provision of 28 U.S.C. § 1332). However, as explained above and Plaintiffs' counsel acknowledges, the Second Circuit has not endorsed this approach. *See Carter*, 822 F.3d at 60; Simplicio Decl. ¶ 6.

Plaintiffs' counsel has, nevertheless, failed to establish Defendant's citizenship under "the usual rule" for LLCs. *Carter*, 822 F.3d at 60. In her declaration, Plaintiffs' counsel represents that Defendant's "sole member is Xdora LLC." Simplicio Decl. ¶ 7. This representation accords with Defendant's amended corporate disclosure statement. *See* Amended Rule 7.1. However,

Plaintiffs fail to properly allege the citizenship of Xdora. Rather, Plaintiffs' counsel asserts that Xdora LLC is "incorporated" in Delaware (which, again, cannot be correct) and that "Xdora's principal place of business could not be ascertained." Simplicio Decl. ¶¶ 7, 8.

Plaintiffs contend that "the nationwide class means any class will be diverse." Simplicio Decl. ¶ 6. However, the Court is not aware of any authority for the proposition that plaintiffs may satisfy minimal diversity simply by purporting to represent a nationwide class. Rather, Plaintiffs have the burden to establish that CAFA provides for subject matter jurisdiction over their lawsuit, in which they assert only state law claims. *See Jok*, 96 F.4th at 293. Despite the Second Circuit expressly declining to decide a defendant's citizenship should be pled under the "usual rule" for LLCs or as an "unincorporated association" under CAFA, *Carter*, 822 F.3d at 60, and despite the Court expressly notifying Plaintiffs that they had not properly pled Defendant's citizenship in the Second Amended Complaint for purposes of establishing minimal diversity, *see* Tr. at 13:19–20, Plaintiffs declined to fully correct the problem. As such, it is not clear that Plaintiffs have met their burden to invoke the Court's jurisdiction. *See Jok*, 96 F.4th at 293; *Carter*, 822 F.3d at 60. Nonetheless, because the Court thinks it likely that it has subject matter jurisdiction, treating Defendant as an unincorporated association under CAFA, *see Claridge*, 2015 WL 5155934, at *2; Simplicio Decl. ¶ 6, the Court proceeds to consider whether Plaintiffs meet their burden to establish standing. As explained below, they do not.

**2. Plaintiffs Failed To Plausibly Allege any Cognizable Injury.**

Defendant argues that this case should be dismissed for lack of subject matter jurisdiction because Plaintiffs fail to plausibly allege a cognizable injury as required to establish standing. In particular, Defendant argues that, based on their own allegations, Plaintiffs do not have a cognizable economic injury because they knowingly paid for exactly "what they received." Mem. at 7; *see id.* at 9 ("By their own admission, Plaintiffs knew the full costs of their purchase,

continued to place the order while fully informed, and received exactly what they paid for—and hence suffered no legally cognizable injury."); SAC ¶¶ 122–23, 135–36. Defendant stresses that Plaintiffs never allege that their purchases were not delivered, were defective, or were otherwise worth less than the products Plaintiffs believed they were purchasing when they agreed to make payment. *See id.* at 7–9. Defendants are correct.

To survive Defendant's motion to dismiss for lack of standing, Plaintiffs "must allege facts that affirmatively and plausibly suggest that [they have] standing to sue," including a cognizable injury in fact. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *see Spokeo*, 578 U.S. at 341. Plaintiffs allege in the Second Amended Complaint, and represented at the oral argument and in their brief, that Plaintiffs' alleged injury for purposes of standing is "lost money." SAC ¶ 160; *accord id.* ¶¶ 173, 181, 206, 214, 215, 224; *see id.* ¶¶ 39, 123, 136, 207, 225; Tr. at 15:13–18, 17:7–13; Opp. at 1, 6. In particular, Plaintiffs contend that "they wouldn't have bought the product at all if they had known the true price of it." Tr. at 15:17–18; *see* SAC ¶ 123 (Had Defendant priced the bouquet with full transparency, listing the true and full price of the bouquet, Plaintiff Walterlakes would have either abstained from purchasing the gift basket, or would have chosen to pay less for an alternative product."); *id.* ¶ 136 ("Had Defendant priced the bouquet with full transparency, . . . Plaintiff Gunzl would have declined the purchase altogether, or would have identified a lower cost alternative.").

It is well established that "overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Moreover, the Second Circuit has recognized that plaintiffs can allege such an "overpayment" by alleging that "they paid more for a product than they otherwise would have due to deceptive marketing." *Cantor v. Beech-Nut Nutrition Co.*, 2026 WL 304246, at *2 (2d Cir. Feb. 5, 2026) (summary order). However, such plaintiffs must still "plausibly allege" that "they

would not have purchased those products or would not have paid as much for them had they known" the truth. *Id.* Specifically, they must plausibly allege that the products "they purchased did not have the promised characteristics." *Id.*

In other words, a plaintiff may establish standing by alleging that he overpaid for a product because of a defendant's deceptive marketing only if the plaintiff plausibly alleges that he was actually deceived. *See id.* Here, Plaintiffs expressly allege and acknowledge that they knew the full price of their purchases, including the so-called Surprise Fee (*i.e.*, the delivery fee), before they chose to pay for them. *See* SAC ¶¶ 123, 136; Tr. at 15:18–21 (acknowledging that Plaintiffs "knew" the "true price" before they placed their orders). Plaintiffs' purchases were, thereafter, delivered as "promised." *Cantor*, 2026 WL 304246, at *2.

Plaintiffs contend that they lost money they would not have agreed to pay if Defendant had disclosed the delivery fee earlier in the purchase process. *See* SAC ¶¶ 123, 136. Specifically, at the oral argument, Plaintiffs represented that they "*might* not have initiated" the process to purchase products from Defendant if they had known from the outset that there would be a later-disclosed delivery fee. Tr. at 17:8 (emphasis added). Plaintiffs' contentions about what they might have done in somewhat different circumstances are too "conjectural or hypothetical" to plead a concrete injury in fact. *Do No Harm*, 126 F.4th at 118. At bottom, Plaintiffs cannot plausibly allege that they would not have purchased Defendant's products "if they had known the true price[s]" of those products because, as Plaintiffs concede, they did know the true prices and did purchase the products. Tr. at 15:17–21.

Plaintiffs attempt to create a false impression that there is authority for the proposition that "failure to disclose fees 'at the outset'" of a transaction can "be an economic injury" for purposes of Article III standing. Opp. at 5 (quoting *Berryman v. Reading Int'l, Inc.*, 763 F. Supp. 3d 596, 606 (S.D.N.Y. 2025) and citing *Vasell v. SeatGeek, Inc.*, 2025 WL 240912, at *12 (E.D.N.Y. Jan.

17, 2025)). Plaintiffs' supposed authorities involve the New York Arts and Cultural Affairs Law ("NYACAL"), which specifically provides that "disclosure of the total cost and fees shall be displayed in the ticket listing prior to the ticket being selected for purchase." NYACAL § 25.07(4). In that specific context, two district court judges in this Circuit concluded that the payment of an "unlawful fee," which was unlawful under the NYACAL because it was not disclosed before the selection of the ticket, was a sufficiently concrete injury for purposes of standing. *Berryman*, 763 F. Supp. 3d at 605–06. Here, by contrast, there is no law establishing that later-disclosed delivery fees (or other fees) are *per se* unlawful in the context of flowers and gift items, and Plaintiffs do not contend their alleged injury is the payment of a *per se* unlawful fee.

Rather, Plaintiffs contend, and cite purported psychological evidence, that once a consumer sees a low initial price and spends time proceeding through a purchase process, he is inclined to "succumb" to a later-disclosed fee "because stomaching it will involve less cognitive effort than restarting their search for a suitable good in the online marketplace." SAC ¶ 29. Whether or not that is so, this theory of consumer psychology does not amount to plausible allegations that Plaintiffs here suffered legally cognizable economic loss. A consumer might choose to "stomach[]" a higher price, instead of shopping around for a less expensive alternative, for any number of reasons. *Id.* Indeed, Plaintiffs' theory implies that a host of common marketing tactics might create cognizable overpayment injuries.[2] Plaintiffs contend that the so-called Surprise Fee is not a delivery fee, but a trick, because sometimes Defendant emails a customer who has abandoned his cart and offers to waive the fee if he completes the transaction. *See* SAC ¶¶ 4, 78.

[2] For example, if a customer goes to a car dealership and pays the sticker price, not realizing that other people negotiate better deals, does he have a cognizable overpayment injury? What if a retailer sells an item of clothing today knowing, but not disclosing, that it will sell the same clothing at 50% off tomorrow? Does a consumer have a legally cognizable overpayment injury if she "succumb[s]" to pay more for an item because of the beautiful styling in an ad campaign? SAC ¶ 29.

However, on that logic, anyone who pays full price for an item that another customer receives for a discount might have an Article III injury for economic loss.

Put another way, Plaintiffs allege that they knowingly chose to spend more money instead of spending more time searching for potential less expensive gifts. *See* SAC ¶¶ 29, 123, 136. If that can be described as an injury, rather than simply a tradeoff, it is a self-inflicted injury because Plaintiffs simply could have chosen not to complete their purchases once Defendant disclosed the delivery fee. It is well-established that Plaintiffs "may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000)). As the Supreme Court and Second Circuit have explained, if an injury is self-inflicted—meaning, the injury is entirely the product of the plaintiff's free choice— there is no "causal connection between the [plaintiff's] injury and the conduct complained of" by the defendant, as required to establish the constitutional minimum for standing. *Do No Harm*, 126 F.4th at 118 (quoting *Lujan*, 504 U.S. at 560–61); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ("respondents' self-inflicted injuries are not fairly traceable to the Government's purported activities"); *St. Pierre*, 208 F.3d at 402 (traceability cannot be established where an injury is "so completely due to the plaintiff's own fault as to break the causal chain").[3]

Plaintiffs allege that they paid the so-called Surprise Fee because they had already spent time and energy on a purchase process that was "designed to exhaust them." Tr. at 16:4; *see* SAC ¶¶ 29, 123, 136. Leaving aside the plausibility of a reasonable person being *exhausted* by clicking

[3] At the oral argument, Plaintiffs' counsel asserted that "the Supreme Court has, in 2022, rejected the idea that a self-inflicted injury . . . kill[s] standing." Tr. at 17:15–18. Although counsel did not cite or describe the precedent she had in mind, the Court believes she was referring to *Federal Election Commission v. Cruz*, 596 U.S. 289 (2022). In that case, the Supreme Court rejected the government's argument that the plaintiff lacked standing—because he had only a self-inflicted injury—where he had "knowingly triggered the application" of an unconstitutional restriction on political speech. *Id.* at 296–97. That case, which is clearly not on point, does not change the basic rule that a supposed injury that is entirely the result of a plaintiff's free choice does not support standing.

through choices, and entering delivery and payment information, for a floral arrangement or gift basket, Plaintiffs expressly acknowledge that they could have "abandoned [their] cart[s]" after Defendant disclosed the Surprise Fee. SAC ¶ 123; *accord id.* ¶ 136. Had Plaintiffs simply chosen not to complete their purchases, they clearly would not have standing. *Grinblat v. Frontline Asset Strategies, LLC*, No. 2023 WL 5002474, at *3 (S.D.N.Y. Aug. 4, 2023) ("the expenditure of time alone is insufficient to establish standing"); *Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 144 (E.D.N.Y. 2021) ("alleged wasted time cannot alone meet the requirements of Article III"). Likely aware that wasted time alone does not confer standing, when the Court asked Plaintiffs if their alleged injury was "going through the long [purchase] process," Plaintiffs were adamant that "[t]he injury, for Article III purposes, is they've lost money." Tr. at 16:24–25, 17:1–2. As explained above, however, Plaintiffs fail to allege an overpayment injury because they knew the prices of their purchases before they elected to proceed past the Review Order page and complete their purchases. *See Cantor*, 2026 WL 304246, at *2; *see* SAC ¶¶ 122–23, 135–36. At this point, when Plaintiffs chose to pay for their items with full knowledge of their full prices, they broke the "causal chain" between Defendant's prior, allegedly misleading, conduct and Plaintiffs' alleged overpayment injury. *St. Pierre*, 208 F.3d at 402; *see Clapper*, 568 U.S. at 418.

Furthermore, Plaintiffs clearly lack standing to seek injunctive relief. To establish standing to seek "prospective relief" in the form of an injunction, "the plaintiff must establish a sufficient likelihood of future injury." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Plaintiffs here fail to plausibly allege that they will *again* be surprised that Defendant discloses a fee at the last stage of the purchase process. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 147–48 (2d Cir. 2020) ("future harm is not likely" where consumers allege they "have been deceived . . . once," since they "will not again be under [any] illusion" about the product).

Plaintiffs argue in their opposition that they should be permitted to amend their pleading for the third time to cure this deficiency. As explained above, the Court warned Plaintiffs that the Second Amended Complaint, which is the third version of Plaintiffs' pleading in this case, would be Plaintiffs' "**last opportunity**" to cure "**any issue raised**" in the pre-motion letters [ECF No. 30 (emphases in original)]. In its pre-motion letter, Defendant expressly asserted that Plaintiffs had failed to establish standing and that the Court should not grant any equitable relief. *See* Def. PML at 1, 3. While these assertions arguably provided Plaintiffs with fair notice that Defendant would attack Plaintiffs' request for an injunction on standing grounds, Plaintiffs contend that they should be permitted to amend, yet again, because Defendant did not spell out its precise argument that Plaintiffs' lack standing to seek injunctive relief. *See* Opp. at 6–7.

It appears, however, that amendment would be futile. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). The Court asked Plaintiffs at the oral argument on what basis the Court could grant their request for prospective relief, and Plaintiffs offered nothing but pure speculation about higher fees and new brands that Defendant "hypothetically" could initiate. *See* Tr. at 21:13–22:8.

As such, the Court concludes that Plaintiffs have failed to "establish a sufficient likelihood of future injury," as required to establish standing to seek an injunction. *All. for Hippocratic Med.*, 602 U.S. at 381. Indeed, as explained above, Plaintiffs fail to plausibly allege any cognizable injury, as required to establish standing for this lawsuit. Accordingly, this case must be dismissed for lack of subject matter jurisdiction, and Plaintiffs are not entitled to another opportunity to amend their pleading further.

**B. Plaintiffs Fail To State a Claim.**

In the alternative, if Plaintiffs do have standing, they fail to state a claim. In particular, in Count I, Plaintiffs purport to assert "Violations of the Consumer Protection Acts of 50 States" (and

the District of Columbia) on behalf of a nationwide class. SAC ¶¶ 153–64. Plaintiffs assert that, in addition to the New York and California laws invoked in the other Counts, Defendant violated the purportedly "similar 'Consumer Protection Acts' identified below." SAC ¶ 154. Plaintiffs proceed to list 49 statutes and to recite generalized allegations that Defendant engaged in a "long-term, common false advertising scheme [that] has misled consumers about Defendant's Surprise Fees. SAC ¶¶ 155, 158. "Merely listing the name and code section of other states' consumer protection statutes does not suffice to state a claim" under Rule 8, however. *Kandel v. Dr. Dennis Gross Skincare, LLC*, 721 F. Supp. 3d 291, 307 (S.D.N.Y. 2024) (alteration omitted) (quoting *Gunaratna v. Dennis Gross Cosmetology LLC*, 2020 WL 8509681, at *7 (C.D. Cal. Nov. 13, 2020)); *see also In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 163 (2d Cir. 2016) (affirming dismissal of state consumer protection claims where "[t]he complaint [did] little more than list a couple dozen state statutes in alphabetical order by state, without pleading any of their elements"); *In re Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 498 (S.D.N.Y. 2022) ("plaintiffs cannot simply enumerate a long list of state-law claims" and "rely on the defendants and the court to sort out whether or how those laws" apply) (internal quotation marks and citation omitted), *aff'd sub nom. Watson Lab'ys, Inc.*, 101 F.4th 223 (2d Cir. 2024). Thus, if Plaintiffs have standing, Count I must be dismissed for failure to state a claim.

Turning to the claims under New York law, the Second Amended Complaint asserts, on behalf Gunzl and a putative New York Subclass, two different claims for violations of the New York Deceptive and Unfair Trade Practices Act (Counts V and VI). *See* SAC ¶¶ 208–25; N.Y.G.B.L. §§ 349, 350. However, such claims are barred by the "voluntary payment doctrine" under New York law, which "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526, 790 N.E.2d 1155, 1156 (N.Y. 2003); *see*

*Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 55, 777 N.Y.S.2d 50, 56 (1st Dep't 2004) ("the voluntary payment doctrine . . . bars recovery of payments voluntarily made with full knowledge of the facts") (internal quotation marks and citation omitted); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009); *Summerville v. Gotham Comedy Found., Inc.*, 765 F. Supp. 3d 293, 301 (S.D.N.Y. 2025). The Second Amended Complaint makes clear that Plaintiffs had "full knowledge" of the so-called Surprise Fee before they voluntarily chose to pay for their respective purchases. *Dillon*, 100 N.Y.2d at 526, 790 N.E.2d at 1156; *see* SAC ¶¶ 123, 136.[4] Moreover, Plaintiffs do not allege that Defendant's ultimate disclosure of the fee was incomplete or misleading. *See Spagnola*, 574 F.3d at 72; *Summerville*, 765 F. Supp. 3d at 301. Thus, if Plaintiffs have standing, their claims under New York law (Counts V and VI) must be dismissed for failure to state a claim.

The Second Amended Complaint also asserts claims under California law, on behalf of Walterlakes and a putative California subclass, for violations of the CLRA, FAL, and UCL (Counts II, III, and IV). *See* SAC ¶¶ 165–207; California Civil Code §§ 1750, *et seq.*; Cal. Bus. & Prof. Code §§ 17500 *et seq.*; Cal. Bus. & Prof. Code §§ 17200 *et seq.* As an initial matter, California courts, like New York courts, appear to recognize the voluntary payment doctrine, which would mean the California claims are likewise barred on that basis. *See American Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586, 15 Cal. Rptr. 209 (Ct. App. 1961) (discussing "the familiar rule that a payment voluntarily made with knowledge of the facts affords no ground for an action to recover it back"); *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011) (under California law, the "voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts"). Moreover, each of these claims is subject to the heightened

[4] Insofar as the voluntary payment doctrine is an affirmative defense, it is nonetheless an appropriate basis for dismissal on a "Rule 12(b)(6) motion" because "the defense appears on the face of the complaint." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149 (2d Cir. 2024); *see Solomon*, 9 A.D.3d at 55, 777 N.Y.S.2d at 56 (describing the voluntary payment doctrine as an affirmative defense).

pleading standards of Rule 9(b). *See Kearns*, 567 F.3d at 1125 (Rule 9(b) applies to CLRA and UCL claims); *Great Pac. Sec.*, 743 F. App'x at 783 (Rule 9(b) applies to FAL claims).

Furthermore, "the UCL, CLRA, and FAL all require plaintiffs suing under them to plead 'actual reliance' on the alleged misrepresentation." *Guzman v. Polaris Indus., Inc.*, 2020 WL 2477684, at *3 (C.D. Cal. Feb. 13, 2020) (collecting cases); *see In re Tobacco II Cases*, 46 Cal. 4th 298, 325, 207 P.3d 20, 38 (2009); *Sloma v. Mercedes-Benz USA, LLC*, 2009 WL 10675023, at *3 (C.D. Cal. July 14, 2009). In particular, plaintiff must allege that "the defendant's [alleged] misrepresentation or nondisclosure was *an immediate cause* of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326, 207 P.3d at 39 (emphasis added) (internal quotation marks and citation omitted). "In other words, a plaintiff may show actual reliance by alleging that 'had the [relevant] information been disclosed [he would have] behaved differently.'" *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093, 858 P.2d 568, 574 (1993)).

Here, Plaintiffs fail to plausibly allege actual reliance on any alleged misleading statement or omission by Defendant. While Plaintiffs allege that Walterlakes relied on the initial "listed price" of the gift basket he selected when he decided to proceed with the purchase process, the Second Amended Complaint makes clear that Defendant disclosed the full price, including the so-called Surprise Fee, before Walterlakes decided to complete his purchase. SAC ¶¶ 116, 122–23. As such, Plaintiffs cannot plausibly allege that the initial price was "an immediate cause" of any "injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326, 207 P.3d at 39. Plaintiffs likewise cannot plausibly allege that Walterlakes would have "behaved differently" if the "information" relevant to his purchase had "been disclosed" because, based on Plaintiffs' own allegations, Defendant did disclose the full price, and Walterlakes chose to proceed. *Williams*, 449 F. Supp. 3d at 913 (quoting *Mirkin*, 5 Cal. 4th at 1093, 858 P.2d at 574)); *see* SAC ¶¶ 122–23

(alleging that Walterlakes was taken to the Review Order page, which disclosed the Surprise Fee, and, nonetheless, chose to complete his purchase).

Accordingly, if Plaintiffs have standing, their California claims (Counts II, III, and IV) must be dismissed for failure to state a claim.

**C. There Are Other Deficiencies with Plaintiffs' Lawsuit.**

In addition to the fatal problems discussed above, the Cout notes that the Terms of Service of Defendant's website plainly appear to require arbitration and foreclose class relief. *See* Terms of Service. The Terms of Service are clearly hyperlinked on Defendant's website, as reflected in several screenshots Plaintiffs included in their own pleading. As such, the Court likely can take judicial notice of the contents of the Terms of Service, *see Force v. Facebook, Inc.*, 934 F.3d 53, 59 n.5 (2d Cir. 2019), and Plaintiffs likely are bound by the Terms of Service, *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016). When the Court asked Plaintiffs about the impact of the Terms of Service at the oral argument, Plaintiffs' counsel represented that she was not "aware" of a "waiver of class actions." Tr. at 17:7. However, the Terms of Service state, in bold, capital letters:

> **PLEASE READ THESE TERMS OF SERVICE CAREFULLY. THEY CONTAIN IMPORTANT INFORMATION REGARDING YOUR LEGAL RIGHTS INCLUDING MANDATORY ARBITRATION, NO CLASS RELIEF, AND WAIVER OF YOUR RIGHT TO A JURY TRIAL.**

Terms of Service at 1 (emphasis in original). In light of the Terms of Service, the Court struggles to see how this lawsuit could proceed, even if, *arguendo*, Plaintiffs had established standing and stated a claim for relief.

## IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Defendant's motion to dismiss [ECF No. 37] is GRANTED, and this case is dismissed without prejudice.

The Clerk of Court respectfully is requested to terminate the motion at docket entry 37 and to close this case.

**SO ORDERED.**

**Date: September 11, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**